1  Jared M. Katz (SBN 173388)
       jkatz@mullenlaw.com
2  MULLEN & HENZELL L.L.P.
3  112 East Victoria Street
   Santa Barbara, CA  93101
4  Telephone: (805) 966-1501
   Facsimile: (805) 966-9204

5
   Gregory J. Scandaglia (pro hac vice)
6      gscandaglia@scandagliaryan.com
   Therese L. Tully (pro hac vice)
7      ttully@scandagliaryan.com
   SCANDAGLIA RYAN LLP
8  55 East Monroe Street, Suite 3440
   Chicago, IL 60603
9  Telephone: (312) 580-2020
10 Facsimile: (312) 782-3806

11 *Attorneys for Defendants H. Ty Warner*
   *and Fairway BB Property, LLC*
12

13            IN THE UNITED STATES DISTRICT COURT FOR THE

14                 CENTRAL DISTRICT OF CALIFORNIA

15

16 KATHRYN ZIMMIE,                        Case No. 21-cv-07853-AFM

17            Plaintiff,                   **DEFENDANTS H. TY WARNER AND
                                           FAIRWAY BB PROPERTY, LLC'S
18       v.                                MEMORANDUM OF POINTS AND
                                           AUTHORITIES IN SUPPORT OF
19 H. TY WARNER, and FAIRWAY BB            THEIR MOTION TO DISMISS**
20 PROPERTY, LLC,

21            Defendants.                  Hearing Date: February 1, 2022
                                           Time: 10:00 a.m.
22                                         Judge: Hon. Alexander F. MacKinnon

23

24

DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

# **TABLE OF CONTENTS**

I.    BACKGROUND ...........................................................................................1

    A.    THE PARTIES' RELATIONSHIP.....................................................1

    B.    PLAINTIFF'S QUIET TITLE CLAIM ................................................2

    C.    PLAINTIFF'S RICO CLAIM ...........................................................3

    D.    PROCEDURAL HISTORY .................................................................4

II.    LEGAL STANDARD ..................................................................................5

III.    ARGUMENT................................................................................................6

    A.    PLAINTIFF HAS NOT STATED A VIABLE QUIET TITLE CLAIM. ...............................................................................................6

        1.    Plaintiff Cannot State a Quiet Title Claim against Fairway Because Fairway Holds Sole Legal Title to the Subject Property. ...............................................................................6

        2.    Plaintiff Cannot State a Quiet Title Claim against Warner Because Plaintiff Has Not Alleged Facts Plausibly Showing Warner Has an Interest in the Subject Property. .........6

    B.    PLAINTIFF HAS NOT STATED A VIABLE RICO CLAIM. ...........8

        1.    Plaintiff Has Not Alleged a Pattern of Racketeering Activity. ...................................................................................10

            i.    Plaintiff has not plausibly alleged open-ended continuity. ..........................................................10

            ii.    Plaintiff has not plausibly alleged closed-ended continuity. ..........................................................13

        2.    Plaintiff Does Not Have Statutory Standing to Bring a RICO Claim. ..............................................................16

            i.    The alleged tax liability of Cleveland Design Consultants does not confer statutory standing on Plaintiff. ............................................................17

ii.    The alleged failure to pay purported amounts that were never owed to Plaintiff does not confer statutory standing.............................................................19

iii.   Any alleged personal injury suffered by Plaintiff cannot confer statutory standing....................................21

3.   Plaintiff Has Not Alleged the Existence of an Enterprise. .......21

C.   PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO RE-PLEAD. ..........................................................................................24

IV.   CONCLUSION ..........................................................................................25

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Ahn v. Hanil Dev., Inc.*, 471 Fed. App'x. 615 (9th Cir. 2012) ..............................18, 20

4

*Ainsworth v. Owenby*, 326 F. Supp. 3d 1111 (D. Or. 2018)........................................21

5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................5

6

*Aversano v. Greenberg Traurig, LLP*, 753 F. Supp. 2d 1063 (C.D. Cal. 2010)..............................................................................................................................22

7

8

*Banks v. Wells Fargo Bank, N.A.*, 2020 WL 5495154 (Cal. Ct. App. Sept. 11, 2020)..........................................................................................................................6

9

*Big O Relief v. County of Kern*, 2018 WL 1210976 (E.D. Cal. Mar. 8, 2018) ...........23

10

*Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008) ....17, 18, 20, 21

11

*Cesare v. Pima, County of*, 2015 WL 13741218 (D. Ariz. Dec. 7, 2015), *report and recommendation adopted sub nom. Cesare v. Pima County*, 2016 WL 836873 (D. Ariz. Mar. 4, 2016)...................................19

12

13

*Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132 (E.D. Cal. 2017) ...............................................................................23

14

*Credit Suisse Sec. (USA) LLC v. W. Coast Opportunity Fund, LLC*, 2009 WL 2356881 (Del. Ch. July 30, 2009).........................................................................7

15

*Doan v. Singh*, 617 Fed. App'x. 684 (9th Cir. 2015) ..................................................22

16

*Ellis v. J.P. Morgan Chase & Co.*, 2015 WL 78190 (N.D. Cal. Jan. 6, 2015) .....21, 23

17

*Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160 (E.D. Cal. 2010) ..................7

18

*Hill v. Opus Corp.*, 841 F. Supp. 2d 1070 (C.D. Cal. 2011) ................................17, 20

19

*Hinkle v. Home123*, 2018 WL 6112633 (C.D. Cal. July 27, 2018) .............................6

20

*Hunt v. Zuffa, LLC*, 361 F. Supp. 3d 992 (D. Nev. 2019) .........................................20

21

*In re Opus E., LLC*, 528 B.R. 30 (Bankr. D. Del. 2015 ........................................7, 17

22

*Kempis v. NCB, FSB*, 2015 WL 7571746 (Cal. Ct. App. Nov. 24, 2015)....................6

23

24

iv

*Kwok v. Transnation Title Ins. Co.*, 89 Cal. Rptr. 3d 141 (Ct. App. 2009)...................8

*Marina Point Dev. Associates v. United States*, 364 F. Supp. 2d 1144 (C.D. Cal. 2005) ........................................................................................................16

*McGowan v. Weinstein*, 505 F. Supp. 3d 1000 (C.D. Cal. 2020)......................passim

*Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360 (9th Cir. 1987) ............................................................10, 12, 13

*Metaxas v. Lee*, 503 F. Supp. 3d 923 (N.D. Cal. 2020).........................................10, 11

*Mir v. Greines, Martin, Stein & Richland*, 2015 WL 4139435 (C.D. Cal. Jan. 12, 2015), *aff'd*, 676 Fed. App'x. 699 (9th Cir. 2017) ...................5, 10, 13, 14

*Nugent v. Saint Agnes Med. Ctr.*, 53 Fed. App'x. 828 (9th Cir. 2002) ......................13

*Oren v. Dromy*, 2019 WL 12383079 (C.D. Cal. Nov. 21, 2019) ................................21

*Pac. Recovery Sols. v. United Behavioral Health*, 481 F. Supp. 3d 1011 (N.D. Cal. 2020) ..........................................................................................20

*Palantir Techs. Inc. v. Abramowitz*, 2021 WL 2400979 (N.D. Cal. June 11, 2021)..................................................................................................passim

*Palantir Techs., Inc. v. Abramowitz*, 2020 WL 9553151 (N.D. Cal. July 13, 2020) ......................................................................................................13

*Poore v. Fox Hollow Enterprises,* 1994 WL 150872 (Del. Super. Ct. Mar. 29, 1994) .......................................................................................................7

*Quillinan v. Ainsworth*, 2018 WL 2151936 (N.D. Cal. May 10, 2018)...............16, 20

*Rote v. Silicon Valley Bank, Inc.*, 2016 WL 4565776 (D. Or. Sept. 1, 2016) ............19

*Royce Int'l Broad. Corp. v. Field*, 2000 WL 236434 (N.D. Cal. Feb. 23, 2000)........................................................................................................9, 16

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529 (9th Cir. 1992)......................................14

*Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046 (C.D. Cal. 2016) ................21, 22

*Sinclair v. Fox Hollow of Turlock Owners Ass'n*, 2011 WL 2433289 (E.D. Cal. June 13, 2011)........................................................................................8

*Smith v. McNulty*, 2020 WL 3866948 (Cal. Ct. App. July 9, 2020)......................8, 17

*Stewart Title Guar. Co. v. 2485 Calle Del Oro, LLC*, 2018 WL 3222610
(S.D. Cal. June 19, 2018) ..................................................................10

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) ..................17

*Uthe Tech. Corp. v. Aetrium Inc.*, 739 Fed. App'x. 903 (9th Cir. 2018) ....................18

*Van Galder v. Clark*, 2018 WL 1071708 (S.D. Cal. Feb. 27, 2018)......................5, 12

*West v. JPMorgan Chase Bank, N.A.*, 154 Cal. Rptr. 3d 285 (Ct. App. 2013) .............7

**Statutes**

CAL. CORP. CODE § 17708.01 (West) ............................................................7

DEL. CODE ANN. TIT. 6, § 18-701 (West)......................................................7

**Rules**

FED. R. CIV. P. 9 ...................................................................................21

**Other Authorities**

1 Larry Ribstein et al., *Ribstein and Keatinge on Ltd. Liab. Cos.* (2021-2022
ed.).......................................................................................................8

J. William Callison & Maureen A. Sullivan, *Limited Liability Companies*
(2021 ed.)..............................................................................................8

vi

Defendants H. Ty Warner and Fairway BB Property, LLC bring this motion to seek dismissal of Plaintiff Kathryn Zimmie's Third Cause of Action for quiet title and her Seventh Cause of Action under the Racketeer Influenced and Corrupt Organizations Act. Neither claim is legally cognizable or properly pled, and Plaintiff has failed to cure her threshold legal defects after three attempts to allege viable causes of action. The Court thus should dismiss both claims without leave to amend.

## I.  BACKGROUND

### A.  THE PARTIES' RELATIONSHIP

The following is a summary of allegations in the Second Amended Complaint. Plaintiff Kathryn Zimmie ("Plaintiff" or "Zimmie") and Defendant H. Ty Warner ("Defendant" or "Warner") began an "off and on" relationship in the late 1970s that continued through the mid-1980s. (Second Amended Complaint ("SAC"), Dkt. No. 41, ¶ 4.) In the late 1990s, the parties resumed their relationship. (*Id.* ¶ 5.)

During the course of their association, Plaintiff claims that Warner and she developed a personal relationship. (*Id.* ¶ 6.) According to Plaintiff, she devoted her time and attention to Warner's needs and gave up her own career opportunities and advancements to be a "companion, protector, confidante, advisor, and helpmate" to Warner. (*Id.* ¶¶ 8, 16-17, 26.) In exchange, Plaintiff alleges, Warner told her that she would be "financially secure" for the rest of her life and an "equal partner[] in their mutual endeavors." (*Id.* ¶ 8; *see also id.* ¶ 17.) Plaintiff says that, over the years, Warner and she discussed whether to get married and "held themselves" out as married but never in fact got married. (*Id.* ¶¶ 9-10.)

Plaintiff claims that Warner and she cohabitated for some years at a house in Santa Barbara, California. (*Id.* ¶ 7.) Warner took care of Plaintiff during that time by paying for her "living expenses" and supporting an "elaborate standard of living." (*Id.* ¶¶ 13, 15.) Warner also helped take care of Plaintiff's daughter over the years by, for instance, driving her to school, teaching her to drive, purchasing her a home, and taking her and Plaintiff's granddaughter on vacations. (*Id.* ¶ 12.)

1

According to Plaintiff, the parties' relationship also had a business component. In the past three decades, Warner pursued various highly successful ventures. (*Id.* ¶ 19.)  Among other things, he founded and ran Ty Inc., which is the leading manufacturer of plush animal toys, as well as various hospitality companies that own renowned hotels and resorts including Four Seasons Hotel New York, the San Ysidro Ranch in California, and Las Ventanas al Paraíso in Cabo San Lucas. (*Id.* ¶¶ 4, 13.) As Warner built his businesses, Zimmie allegedly performed certain tasks such as attending trips, working on the redecoration of several properties, and creating some designs and artwork for use in products, advertisements and menus. (*Id.* ¶¶ 4, 6, 16; *see also id.* ¶¶ 78-86.)

In November 2020, Zimmie ended the parties' relationship. (*Id.* ¶¶ 5, 31.)

**B.   PLAINTIFF'S QUIET TITLE CLAIM**

In 2000, a company owned by Warner named HTW, LLC purchased a property located at 1000 Channel Drive, Santa Barbara, California (the "Channel Drive Property" or the "subject property"). (*Id.* ¶¶ 40, 45.)

In 2004, sole legal title to the Channel Drive Property was transferred by HTW, LLC to Defendant Fairway BB Property, LLC, which is a Delaware LLC. (*Id.* ¶¶ 40-41; *see also* Exhibit A to SAC, Dkt. No. 41-1.)  Since then, Fairway has remained the sole titleholder of the subject property. (SAC, Dkt. No. 41, ¶ 3.)

Warner is the Chief Executive Officer as well as the sole manager and member of Fairway. (*Id.* ¶ 42.)  Importantly, though, title to the property is held solely by Fairway (not Warner). (*Id.* ¶ 3.)  Plaintiff has not alleged any factual or legal basis for attributing to ***Warner*** property interests that are owned and held exclusively by ***Fairway***.

According to Plaintiff, the property was allegedly acquired "for both" Plaintiff and Warner, who developed their own personal spaces in the house and cohabited there in subsequent years. (*Id.* ¶¶ 6, 45.)  Plaintiff asserts that Warner and she "considered themselves to be equal owners" of the property. (*Id.* ¶ 45.)  She further

claims that they each acquired "an undivided one-half ownership interest" in the property because Plaintiff agreed to act as Warner's companion, confidante, helpmate and partner while he agreed to provide for her and financially support her.  (*Id.* ¶ 50.) Plaintiff does not allege, however, that title to the property was transferred to Warner or her at any time.

In her Third Cause of Action, Plaintiff asserts a quiet title claim against Fairway and Warner.  In that count, Plaintiff claims that she is entitled to an undivided one-half interest in the property as noted above.  (*Id.* at Prayer for Relief.) She asserts that Fairway has an interest adverse to her claim as the sole holder of title to the property and asserts in a conclusory and vague manner that Warner "claims" an undescribed adverse interest as well.  (*Id.* ¶¶ 46, 51.)  As a remedy, Plaintiff asks that the Court order that she owns a one-half interest in the property or one-half of its fair market value.  (*Id.* at Prayer for Relief.)

## C.   PLAINTIFF'S RICO CLAIM

Plaintiff alleges that, in approximately 2018, Warner formed a scheme to perpetuate his relationship with Plaintiff by, through deceit and fraud, "convincing her that she was properly compensated" and "would always be financially secure." (*Id.* ¶ 96.)  In carrying out the scheme, Plaintiff claims that Warner formed an enterprise with unidentified "individuals who assisted him in his financial and legal affairs."  (*Id.* ¶ 92.)  According to Plaintiff, these individuals used her identity to form a Delaware limited liability company called Cleveland Design Consultants, LLC ("Cleveland Design Consultants") without her knowledge.  (*Id.* ¶¶ 98, 101.)  In doing so, Plaintiff says, they used documents that she did not sign and that contain "inauthentic signatures."  (*Id.* ¶¶ 103-104.)  Once the entity was formed, Plaintiff alleges, the members of the enterprise wired funds "into and through" Cleveland Design Consultants.  (*Id.* ¶ 105.)  From there, Plaintiff asserts, Cleveland Design Consultants transferred the funds "into other accounts."  (*Id.* ¶ 106.)  According to Plaintiff, the transfers came to an end in 2020 (*id.* ¶ 109) and she eventually

uncovered the alleged components of the supposed scheme (*see generally id.* ¶¶ 91-113.)  In her Seventh Cause of Action, Plaintiff asserts that this alleged scheme violates the Racketeer Influenced and Corrupt Organizations Act ("RICO").

## D.  PROCEDURAL HISTORY

On March 12, 2021, Warner filed a declaratory judgment action in the United States District Court for the Northern District of Illinois, Case No. 21 CV 1390.  In that action, Warner alleges a company owned by Plaintiff, which is named Cleveland Design Consultants, LLC, entered into a valid written contract on January 16, 2018 with two companies owned by Warner (Ty Inc. and Ty Warner Hotels & Resorts, LLC).  (Complaint at ¶ 16, *Warner v. Zimmie*, No. 21-cv-1390 (N.D. Ill. Mar. 12, 2021).)  Warner alleges that this agreement governed work performed by Zimmie on behalf of the companies and provided for the payment of a monthly consulting fee of $16,666.00 to Cleveland Design Consultants.  (*Id.*)  Warner alleges that Plaintiff and he did not form any other oral or implied agreement to provide for her ongoing support or services (as Plaintiff has previously claimed and has alleged in this case).  (*Id.*)  Warner's prayer for relief includes a request for a declaratory judgment establishing that there is no such agreement.[1]

On September 1, 2021, Plaintiff filed this lawsuit in the Superior Court of the State of California, County of Santa Barbara.  (Notice of Removal, Dkt. No. 1, ¶ 8.)  In that initial complaint, Plaintiff asserted, among other causes of action, a quiet title claim and a RICO claim.  (*Id.* ¶ 9.)  On October 14, 2021, after the case was removed to this Court, Plaintiff amended her complaint.  (First Amended Complaint, Dkt. No. 22.)  Pursuant to Local Rule 7-3, on November 2, 2021, the parties held a meet and confer regarding the deficiencies in the complaint identified by counsel for

---

[1] Although Warner alleges in the Illinois action that the written agreement with Cleveland Design Consultants is an enforceable and valid contract, Plaintiff alleges in her Second Amended Complaint that it is a "***fictitious*** agreement."  (SAC, Dkt. No. 41, ¶ 21) (emphasis added).  For the purposes of this motion only, Plaintiff's allegation is accepted as true.

4

Defendants, which Plaintiff had failed to cure through her first amendment.  During the discussion, Defendants' counsel expressly noted the deficiencies in Plaintiff's quiet title claim and RICO claim that are raised in this Motion to Dismiss.  Following the meet and confer, Plaintiff again amended her complaint to cure the deficiencies with her claims.  (Second Amended Complaint, Dkt. No. 41).  However, the quiet title claim and RICO claim in the Second Amended Complaint still had the same deficiencies that Defendants previously had raised with Plaintiff.  The parties thus held another meet and confer on December 9, 2021, during which they were unable to reach a resolution that would eliminate the need for this motion.

## II.   LEGAL STANDARD

To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In determining whether a plaintiff has satisfied that standard, a court accepts properly pled factual allegations as true and construes them in favor of the plaintiff.  *Van Galder v. Clark*, 2018 WL 1071708, at *2 (S.D. Cal. Feb. 27, 2018).  However, a court need not "accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences."  *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1010 (C.D. Cal. 2020); *see also Mir v. Greines, Martin, Stein & Richland*, 2015 WL 4139435, at *14 (C.D. Cal. Jan. 12, 2015), *aff'd*, 676 Fed. App'x. 699 (9th Cir. 2017).  A complaint "that offers 'labels and conclusions' or 'a formalistic recitation of the elements of a cause of action will not do.'"  *McGowan*, 505 F. Supp. 3d at 1010.  If the properly pled allegations (1) do not support a cognizable legal theory or (2) do not contain sufficient facts under a cognizable legal claim, then the claim must be dismissed.  *Mir*, 2015 WL 4139435, at *14.  The dismissal should be granted without leave to amend if either an amendment would be futile or the plaintiff has repeatedly failed to cure the deficiencies.  *Palantir Techs. Inc. v. Abramowitz*, 2021 WL 2400979, at *4 (N.D. Cal. June 11, 2021).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.   ARGUMENT

**A.**   **PLAINTIFF HAS NOT STATED A VIABLE QUIET TITLE CLAIM.**

In her Third Cause of Action, Plaintiff seeks to assert a quiet title claim against Warner and Fairway.  In this claim, Plaintiff seeks an order quieting title as to her alleged interest in the Channel Drive Property.  As explained below, this claim is legally deficient and fails to state a claim against either Defendant.  Accordingly, the Third Cause of Action should be dismissed without leave to amend.

**1.  Plaintiff Cannot State a Quiet Title Claim against Fairway Because Fairway Holds Sole Legal Title to the Subject Property.**

It is well established that only a legal title holder can assert a quiet title claim against another legal title holder.  *Banks v. Wells Fargo Bank, N.A.*, 2020 WL 5495154, at *8 (Cal. Ct. App. Sept. 11, 2020); *Kempis v. NCB, FSB*, 2015 WL 7571746, at *4 (Cal. Ct. App. Nov. 24, 2015).  Plaintiff has alleged in her Second Amended Complaint that Fairway, a Delaware limited liability company, owns and holds legal title to the property located at 1000 Channel Drive, Santa Barbara, California 93108.  (SAC, Dkt No. 41, ¶ 3.)  Conversely, Plaintiff does not (and indeed cannot) allege that she now holds or ever has held legal title to the Channel Drive Property.  Because Plaintiff's own allegations establish that she does not hold legal title to the Channel Drive Property, she has not and cannot, as a matter of law, assert a quiet title claim against the legal title holder, which is Fairway.  *Kempis*, 2015 WL 7571746, at *4.

**2.  Plaintiff Cannot State a Quiet Title Claim against Warner Because Plaintiff Has Not Alleged Facts Plausibly Showing Warner Has an Interest in the Subject Property.**

In her Third Cause of Action, Plaintiff also seeks to assert a quite title claim against Warner individually.  (SAC, Dkt. No. 41, ¶ 51.)  A quiet title claim can only be asserted against a defendant where the complaint contains allegations demonstrating that the defendant has an interest in the subject property.  *Hinkle v.*

6

*Home123*, 2018 WL 6112633, at *6-7 (C.D. Cal. July 27, 2018) (dismissing a quiet title claim where the plaintiff did not allege specific adverse claims to title); *Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1177 (E.D. Cal. 2010) (dismissing a quiet title claim where the "[d]efendants lack[ed] an interest in the property subject to a quiet title claim"); *West v. JPMorgan Chase Bank, N.A.*, 154 Cal. Rptr. 3d 285, 303 (Ct. App. 2013) (dismissing a quiet title claim where the plaintiff did not allege facts showing the defendant had an interest in the subject property).

As discussed above, Fairway holds title to and is the legal owner of the Channel Drive Property.   As the exhibits to Plaintiff's Second Amended Complaint demonstrate, Warner does not hold legal title to the property at issue.  (Exhibit A to SAC, Dkt. No. 41-1.)   Plaintiff's only basis for trying to assert a quiet title claim against Warner is that he is the Chief Executive Officer, sole member, and manager of Fairway.  (SAC, Dkt. No. 41, ¶¶ 42, 48, 51.)  Because Fairway is a Delaware LLC, under the internal affairs doctrine, Delaware law governs the analysis of Warner's rights and interests as a member and a manager of Fairway. CAL. CORP. CODE § 17708.01(a) (West) (noting that the law of the state in which a limited liability company is formed governs "[t]he organization of the limited liability company, its internal affairs, and the authority of its members and managers")  Under Delaware law, an LLC is a separate legal entity.  *In re Opus E., LLC*, 528 B.R. 30, 57 (Bankr. D. Del. 2015) ("The corporate identity for single-member LLCs is also respected."). Since an LLC has a separate legal existence from its members, the property it owns is the property of the LLC, not the property of its members or managers.  DEL. CODE ANN. TIT. 6, § 18-701 (West).  The Delaware Limited Liability Company Act clearly states that: "A limited liability company interest is personal property.  A member has no interest in specific limited liability company property." *Id.*  Therefore, members of an LLC do not have an ownership interest in property to which the LLC holds title. *Poore v. Fox Hollow Enterprises,* 1994 WL 150872, at *2 (Del. Super. Ct. Mar. 29, 1994); *see also Credit Suisse Sec. (USA) LLC v. W. Coast Opportunity Fund,*

*LLC*, 2009 WL 2356881, at *3 (Del. Ch. July 30, 2009) ("Evans does not own the GreenHunter stock in question. It is entirely the property of Investment Hunter, and Evans's status as a member does not alter this fact."); 1 Larry Ribstein et al., *Ribstein and Keatinge on Ltd. Liab. Cos.* § 8:2 (2021-2022 ed.) ("[N]either individually nor collectively do the members have a direct ownership or possessory interest in the LLC's property.").  Accordingly, Plaintiff has failed to properly allege any facts showing that Warner has an interest in the subject property and has consequently failed to state a claim for quiet title against Warner.

Plaintiff may argue that California law governs what rights Warner may or may not have in property owned by Fairway, which is a Delaware LLC.  As noted above, such an argument would run afoul of the internal affairs doctrine, which provides that Delaware law must govern the rights of a member and manager of a Delaware LLC.  In any event, California law also respects the separate corporate existence of an LLC, *Smith v. McNulty*, 2020 WL 3866948, at *4 (Cal. Ct. App. July 9, 2020) ("[A] limited liability company can have a single member and maintain its corporate separateness."), and recognizes that an LLC's members do not have an ownership interest in property to which the LLC holds title, *Sinclair v. Fox Hollow of Turlock Owners Ass'n*, 2011 WL 2433289, at *4 (E.D. Cal. June 13, 2011); J. William Callison & Maureen A. Sullivan, *Limited Liability Companies* § 4:1 (2021 ed.); *Kwok v. Transnation Title Ins. Co.*, 89 Cal. Rptr. 3d 141, 147 (Ct. App. 2009). Consequently, the outcome is the same regardless of whether Delaware or California law is applied

Because the Second Amended Complaint does not allege any facts that plausibly show Warner has an adverse interest in the Channel Drive Property in his personal capacity, the Third Cause of Action fails to state a claim and must be dismissed.

## B.   <u>PLAINTIFF HAS NOT STATED A VIABLE RICO CLAIM.</u>

In the Seventh Cause of Action, Plaintiff attempts to transform allegations describing a soured business and personal relationship into a RICO claim.    In

various overtures that Plaintiff made to Defendant prior to the filing of this case, she repeatedly threatened to include allegations in her complaint designed to slander Warner's reputation.  Her drummed up RICO count is just one of the improper vehicles Plaintiff has used to try to accomplish that aim.  However, "[t]he RICO statute was enacted with the goal of 'eradicat[ing] organized, long-term criminal activity.'"  *Royce Int'l Broad. Corp. v. Field*, 2000 WL 236434, at \*4 (N.D. Cal. Feb. 23, 2000) (quoting *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992)).  It was not intended to and does not provide a federal remedy for every business or personal relationship that has soured, even if state law claims may arise out of the alleged conduct at issue.  *Id.*  Courts in this circuit have routinely found that a purely private dispute – like the one at issue here – is "not the kind of dispute Congress contemplated in enacting 'the civil treble damages remedy to the federal RICO statute.'"  *Id.* (quoting *Midwest Grinding Co., Inc.*, 976 F.2d at 1025).

"To state a RICO claim, a plaintiff must allege that the defendant engaged in: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, and, additionally, must establish that (5) the defendant caused injury to the Plaintiff's business or property."  *Palantir Techs. Inc.*, 2021 WL 2400979, at \*7.

Plaintiff's Seventh Cause of Action is a transparent and flawed attempt to manufacture an inflammatory claim.  Plaintiff's allegations in this case have no relationship to the type of long-term organized criminal activity that is within the ambit of RICO.  Because of the fundamental disjunction between the conduct prohibited by RICO and the allegations in the Second Amended Complaint, Plaintiff's claim suffers from three separate and independently fatal threshold deficiencies.  First, Plaintiff has failed to plead a pattern of racketeering activity.  Second, Plaintiff lacks statutory standing because she has not alleged an injury that is cognizable under RICO.  Third, Plaintiff has failed to allege the existence of an enterprise under both the plausibility standard and the heightened pleading

requirements of Federal Rule of Civil Procedure 9(b).  Each of these deficiencies is independently fatal to Plaintiff's claim and will be discussed below.

### 1.  Plaintiff Has Not Alleged a Pattern of Racketeering Activity.

An essential element of a RICO claim is a pattern of racketeering activity. *Mir*, 2015 WL 4139435, at *20.   The pattern element is at the core of a RICO claim. As the Ninth Circuit has recognized, "[t]he articulation of a coherent definition of 'pattern' is essential to the rational development of RICO law."  *Medallion Television Enterprises, Inc. v. SelecTV of California, Inc*., 833 F.2d 1360, 1363 (9th Cir. 1987). A proper construction of the pattern requirement thus "is necessary to limit the reach of the RICO statute to its intended target—organized crime." *Id.* (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 528 (1985) (Powell, J., dissenting)).

To establish a pattern of racketeering activity, a plaintiff must allege facts demonstrating that the racketeering predicates "amount to or pose a threat of *continued* criminal activity." *Metaxas v. Lee*, 503 F. Supp. 3d 923, 944 (N.D. Cal. 2020) (quoting *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir.  2004)) (emphasis added).  To satisfy this "continuity requirement," a plaintiff must plead "either a series of related predicates extending over a substantial period of time [i.e., closed-ended continuity], or past conduct that by its nature projects into the future with a threat of repetition [i.e., open-ended continuity]." *Mir*, 2015 WL 4139435, at *21 (quoting *Howard v. Am. Online Inc.*, 208 F.3d 741, 750 (9th Cir. 2000)) (internal quotation marks omitted).  When, as here, a RICO claim sounds in fraud, the pattern element must be pled with the particularity demanded by Federal Rule of Civil Procedure 9(b).  *Stewart Title Guar. Co. v. 2485 Calle Del Oro, LLC*, 2018 WL 3222610, at *18 (S.D. Cal. June 19, 2018).  Here, Plaintiff has failed to allege facts sufficient to establish either type of continuity.

### i.   Plaintiff has not plausibly alleged open-ended continuity.

Open-ended continuity exists only if either (1) "the predicate acts include a specific threat of repetition extending indefinitely into the future" or (2) "the

10

1  predicate acts were part of an ongoing entity's regular way of doing business."
2  *Palantir*, 2021 WL 2400979, at *7 (quoting *Mocha Mill, Inc. v. Port of Mokha, Inc.*,
3  2019 WL 1048252, at *10 (N.D. Cal. Mar. 5, 2019)).  Plaintiff has not adequately
4  alleged either prong of the open-ended continuity requirement.

5       The allegations in the Second Amended Complaint do not establish any future
6  threat – much less a specific and repeated threat that extends indefinitely into the
7  future.  Plaintiff seeks to hide the deficiencies in her complaint through a series of
8  muddled allegations that often are internally inconsistent and nonsensical.  However,
9  distilled to its gravamen, Plaintiff alleges that Warner and others associated with him
10  misappropriated Plaintiff's identity to form an allegedly fictitious LLC in Plaintiff's
11  name without her knowledge, which Warner allegedly controlled and used to redirect
12  funds.  (SAC, Dkt. No. 41, ¶¶ 96, 98, 101, 107.)  To carry out this fraud, Warner
13  purportedly manufactured a consulting agreement between his companies and the
14  allegedly fictitious LLC that was in Plaintiff's name.  (*Id.* ¶¶ 21, 112.)  Plaintiff
15  alleges that the fictitious agreement was terminated in January of 2021 and that the
16  payments made to the allegedly fake entity stopped at some unspecified date during
17  2020.  (*Id.* ¶¶ 21, 109, 112.)

18       The allegations in Plaintiff's Second Amended Complaint reflect that the
19  complained of conduct already has come to an end.  The business and personal
20  relationships between Plaintiff and Warner have concluded.  (*Id.* ¶ 21.)  The
21  formation of the allegedly fictitious LLC and the related acts were one-time events
22  that took place in January 2018. (*Id.* ¶ 101.)  The wire transfers stopped in 2020. (*Id.*
23  ¶ 109.)  And the alleged "fictitious agreement" was terminated in January of 2021.
24  (*Id.* ¶ 21.)  Plaintiff's own allegations thus reflect that the alleged scheme concluded
25  many months ago.  *See Metaxas,* 503 F. Supp. 3d at 941 (holding that there was no
26  continuity where the denial of retirement benefits to the plaintiff supplied "the means
27  for, and constitute[d] the but for cause of," racketeering activity directed at others).

28

Plaintiff has not alleged any facts showing that the purported scheme will continue into the future. The absence of such allegations alone is fatal to her claim. Plaintiff's inability to cure that defect is established by what she does allege about the nature and purpose of the scheme. According to Plaintiff, Warner developed a singular scheme intended primarily to "deceive and defraud" her and "perpetuate" her relationship with Warner. (SAC, Dkt. No. 41, ¶ 96.) That purpose has been entirely obviated because, as Plaintiff affirmatively alleges, she has terminated her relationship with Warner and is now aware of the supposed components of the scheme. Therefore, Plaintiff's own allegations regarding the nature and purpose of the supposed scheme establish that it cannot continue into the future. *See Medallion Television Enterprises, Inc.*, 833 F.2d at 1364 (finding that predicate acts designed to bring about a single event – the signing of a television contract – did not pose a threat of continuity); *see also McGowan*, 505 F. Supp. 3d at 1013-14.

Plaintiff fares no better with the second prong of the open-ended continuity analysis. Because RICO targets organized criminal enterprises engaged in certain types of long-term schemes, the second prong is satisfied only when the allegedly criminal conduct is part of an ongoing entity's regular way of doing business. Here, that means Plaintiff would have to plead facts plausibly alleging that an ongoing entity routinely engaged in a set of activities involving the *same type* of allegedly unlawful scheme at issue in this particular case. *Van Galder*, 2018 WL 1071708, at *5 ("In other words, Plaintiff's FAC does not contend that Defendants' routine business is to file fraudulent bankruptcy cases or that Roger is likely to file a second bankruptcy case to continue to participate in the enterprise of defrauding his creditors, including Plaintiff."). Plaintiff, however, has not alleged an ongoing entity, and she has not alleged that Warner repeatedly engaged in wire fraud or identity theft – the claimed predicate acts relied upon by Plaintiff – in order to defraud other individuals with whom he was in a similar personal and business relationship. Instead, Plaintiff alleges a single, isolated scheme specifically directed to her

1    individually and arising out of her decades-long relationship with Warner (which

2    ended in 2020).  Plaintiff has not alleged facts identifying any other similarly-situated

3    individuals affected by or supposed victims of the same alleged scheme set forth in

4    the Second Amended Complaint.  As a matter of law, Plaintiff's allegations do not

5    reflect a "regular way of doing business" by Warner that could amount to an ongoing

6    scheme to defraud anyone.

7          Because Plaintiff has not alleged facts showing either "a specific threat of

8    repetition extending indefinitely into the future" or "that the predicate acts were part

9    of an ongoing entity's regular way of doing business," she cannot state a RICO claim

10    based on open-ended continuity.  *Palantir*, 2021 WL 2400979, at *7.

11              ii.   Plaintiff has not plausibly alleged closed-ended continuity.

12          Although an alternative method of establishing the required pattern under

13    RICO, closed-ended continuity still serves the purpose of limiting RICO's reach to

14    its intended target – organized crime.  *Medallion Television Enterprises, Inc.*, 833

15    F.2d at 1363.  In particular, closed-ended continuity requires a series of related and

16    varied predicates extending over a substantial period of time that affected multiple

17    victims and caused multiple injuries.  *Mir*, 2015 WL 4139435, at *21.   To that end,

18    in assessing closed-ended continuity, courts in this circuit generally consider four

19    factors: "(1) the number and variety of predicate acts; (2) the presence of separate

20    schemes; (3) the number of victims; and (4) the occurrence of distinct injuries."

21    *McGowan*, 505 F. Supp. 3d at 1012 (quoting *NSI Tech. Servs. Corp. v. Nat'l*

22    *Aeronautics & Space Admin.*, 1996 WL 263646, at *3 (N.D. Cal. Apr. 13, 1996)).  In

23    applying these factors, the second is the most important and typically determinative.

24    *Nugent v. Saint Agnes Med. Ctr.*, 53 Fed. App'x. 828, 829 (9th Cir. 2002) (holding

25    that when a scheme involves "but a single alleged fraud with a single victim," there is

26    no threat of continuity).  Consequently, as courts in the Ninth Circuit have recognized

27    repeatedly, closed-ended continuity does not exist where there is a single scheme

28    directed at a single victim.  *Id.*; *Palantir Techs. Inc.*, 2021 WL 2400979, at *7

(finding single-victim cases with a single episode—regardless of the alleged number of actual acts—and a single purpose do not meet the continuity requirement); *Palantir Techs., Inc. v. Abramowitz*, 2020 WL 9553151, at *15 (N.D. Cal. July 13, 2020) (concluding that, in the Ninth Circuit, "RICO's continuity requirement is not satisfied if plaintiffs have merely alleged a single fraud perpetrated on a single victim."); *McGowan*, 505 F. Supp. 3d at 1012 (noting the same principle); *Mir*, 2015 WL 4139435, at *21 (same).

*Sever v. Alaska Pulp Corp*., 978 F.2d 1529 (9th Cir. 1992), is instructive. In that case, the plaintiff worked for a company that harvested timber in a national forest in Alaska and operated a pulp mill in the same state. *Id.* at 1532. A dispute arose between the company and its union, which ultimately led the plaintiff to write letters critical of his employer and even testify before a subcommittee of the House of Representatives. *Id.* The plaintiff claimed that, in retribution for his actions, the company blacklisted and retaliated against him. *Id.* In doing so, the company not only refused to rehire him itself but also exerted its influence over other employers to cause them to fire or refuse to hire him. *Id.* at 1532-33. On appeal, the Ninth Circuit recognized that the plaintiff had alleged a somewhat complex scheme involving "a number of 'acts'" by the company. *Id.* at 1535. However, the court held such allegations were insufficient because the company's conduct constituted "in a sense a single episode having [a] singular purpose" directed at "a single victim." *Id.* For that reason, the court affirmed the dismissal of the plaintiff's RICO claim for lack of continuity. *Id.* at 1535-36.

In *Palantir Technologies Incorporated v. Abramowitz*, the court was confronted with an even more complex scheme involving repeated and varied misconduct over a number of years that involved multiple separate entities and people and caused multiple distinct injuries. In that case, the defendant was a former investor and advisor to the plaintiff, a data analytics company called Palantir. 2021 WL 2400979, at *1. For more than half-a-dozen years, he was actively involved in

14

the company's business.  *Id.*  During that time, he gained access to substantial proprietary information through various techniques – including discussions with employees and direct access to information regarding particular technologies – by misrepresenting his intentions and activities to Palantir and third parties.  *Id.* at *2-3. The defendant then used that information to file fraudulent patent applications and launch a competing business, which caused substantial injuries to Palantir by, among other things, harming multiple multi-million-dollar lines of business, publicly disclosing its trade secrets, and forcing Palantir to pursue legal proceedings regarding the patents.  *Id.* at *3.

At the motion to dismiss stage, the court emphasized that "RICO's continuity requirement is not satisfied if plaintiffs have merely alleged a single fraud perpetrated on a single victim."  *Id.* at *7 (quoting *United Energy Owners Comm., Inc. v. U.S. Energy Mgmt. Sys., Inc.*, 837 F.2d 356, 360 (9th Cir. 1988)).  Despite the breadth, longevity, and complexity of the defendant's scheme, the court held that it still only constituted a single episode directed at a single victim for a single purpose.  *Id.* at *9. Thus, the court dismissed Palantir's RICO claim.  *Id.* at *10; *see also McGowan*, 505 F. Supp. 3d at 1012-13 (relying on the same principle to dismiss a RICO claim based on a scheme involving a "veritable multitude of efforts" by multiple entities and people to harm an artist and activist's reputation and business interests by influencing not only her but also third parties that she trusted).

The legal principles relied upon and applied in *Sever*, *Palantir*, and *McGowan* (as well as the other cases cited above) control the outcome of this case.  Plaintiff has alleged a single episode (the use of an improperly-formed LLC to transfer funds) directed at a single victim (Plaintiff) to achieve one central purpose (defrauding and deceiving Plaintiff to perpetuate her relationship with Warner).  Under the law of this circuit, such a scheme is woefully insufficient, as a matter of law, to plead close-ended continuity.

15

Because Plaintiff is unable to plausibly allege either open-ended or closed-ended continuity, she cannot satisfy the pattern element of RICO and her Seventh Cause of Action must be dismissed.  This deficiency arises from threshold legal principles and the nature of the alleged scheme.  It cannot be cured by amendment. Consequently, Plaintiff's inability to plead a pattern under RICO requires, on its own, dismissal without leave to re-plead.

### 2.  Plaintiff Does Not Have Statutory Standing to Bring a RICO Claim.

RICO was enacted to "combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff."  *Marina Point Dev. Associates v. United States*, 364 F. Supp. 2d 1144, 1148 n.3 (C.D. Cal. 2005) (quoting *Oscar v. Univ. Students Co–operative Ass'n,* 965 F.2d 783, 788 (9th Cir.1992)); *see also Royce Int'l Broad. Corp.*, 2000 WL 236434, at *4 (explaining that RICO was enacted to eradicate organized, long-term criminal activity).  "[T]o keep civil RICO true to" that "'original conception,'" the statute imposes demanding standing requirements. *Id.* (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 500 (1985)).  In particular, 18 U.S.C. § 1964(c) requires a plaintiff to show (1) that she suffered an injury to her business or property and (2) that the injury was suffered "by reason of" the alleged RICO violation, "which requires the plaintiff to establish proximate causation."  *Quillinan v. Ainsworth*, 2018 WL 2151936, at *4 (N.D. Cal. May 10, 2018).  If a plaintiff cannot satisfy both of these requirements, then she lacks statutory standing and cannot state a cognizable RICO claim.  *Id.*

Plaintiff has not suffered any injury that can give rise to standing under RICO. Plaintiff thus is left to strain in the Second Amended Complaint to concoct a supposed injury out of three imagined harms.  None is coherently pled as a factual matter – indeed, the Second Amended Complaint contains facts showing none of the supposed harms has been suffered by Plaintiff – and none is legally cognizable under RICO.  First, Plaintiff alleges that Cleveland Design Consultants, LLC ("Cleveland Design Consultants") – not Plaintiff personally – incurred an unspecified tax liability.

(SAC, Dkt. No. 41, ¶ 110.)  Second, Plaintiff states that she did not receive certain payments for design services that were purportedly provided for in what she affirmatively alleges was a "*fictitious* agreement."  (*Id.* ¶ 112) (emphasis added).  Third, Plaintiff claims that she suffered "identity theft" when Cleveland Design Consultants was formed allegedly without her knowledge and consent.  (*Id.* ¶ 113.)  For the reasons explained below, these supposed injuries are wholly unsupported by the factual allegations of the Seconded Amended Complaint and do not provide any basis for standing under RICO.

<blockquote>i.  <u>The alleged tax liability of Cleveland Design Consultants does not confer statutory standing on Plaintiff.</u></blockquote>

Plaintiff claims that the alleged scheme caused Cleveland Design Consultants to incur a tax liability that remains unpaid to this day.  (*Id.* ¶ 110.)  Plaintiff does not describe the type of tax at issue or how the tax was incurred and instead relies on a vague reference to "overdue taxes on the Cleveland Design Consultants, LLC business."  (*Id.*)  Tellingly, Plaintiff does not even state the very small dollar amount that is owed for the purported tax.  The Second Amended Complaint does make clear, though, that it is a tax on Cleveland Design Consultants rather than a tax on Plaintiff personally.

To have standing under RICO, a party must allege that it has been injured in its "business or property."  *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008).  A party has standing under RICO only when "the alleged violation led directly to *plaintiff's* injuries."  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008) (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)) (emphasis added).  In other words, injuries to third parties other than the plaintiff are not cognizable under RICO.  *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1096 (C.D. Cal. 2011) ("Analyzing these factors, the Supreme Court has held that a plaintiff cannot recover under RICO for injuries caused to a third party.").  Here, Plaintiff has not alleged any concrete economic effect that the tax has had on her.  As

already noted, the tax is a liability not of Plaintiff personally but of Cleveland Design Consultants, which has a separate and distinct corporate existence. *See In re Opus E., LLC*, 528 B.R. at 57 (applying the law of Delaware, where Cleveland Design Consultants was formed); *Smith*, 2020 WL 3866948, at *4 (applying California law). Plaintiff has not paid the tax, which remains "overdue," or otherwise experienced any harm from it. (SAC, Dkt. No. 41, ¶ 110.) Because the supposed tax has not had any economic effect ***on Plaintiff***, she cannot satisfy RICO's standing requirement.

The allegations alleged by Plaintiff entirely undercut any claim that she even could have suffered a harm personally because of the purported tax liability. Plaintiff affirmatively alleges that Cleveland Design Consultants was improperly formed by other people "without her knowledge" or involvement by using "unauthentic" documents. (*Id.* ¶¶ 101-04.) Although Defendants do and will strongly dispute these false allegations as the case proceeds, Plaintiff's allegations must be accepted as true for the purposes of this motion. According to those allegations, Plaintiff had no personal involvement in or responsibility for the actions or liabilities of Cleveland Design Consultants. Plaintiff thus cannot allege that she was personally effected in any way by the purported tax liability of the LLC.

Faced with this motion, Plaintiff may attempt to evade dismissal by speculating about the potential effects that the tax liability might have had on her as a member of Cleveland Design Consultants. As already noted, such speculation would be unsupported by and contrary to the factual allegations contained in the Second Amended Complaint. Even if Plaintiff had alleged different facts, though, the argument still would be badly misguided. In the corporate context, a shareholder of a corporation or a member of an LLC "may not acquire standing [under RICO] by alleging only derivative harm" flowing from an injury to the company itself. *Ahn v. Hanil Dev., Inc.*, 471 Fed. App'x. 615, 617 (9th Cir. 2012). That is true even if the injury to the company in turn has substantial economic effects on the plaintiff, as courts throughout this Circuit have repeatedly recognized. *E.g., id.* (holding the

alleged fraud against the plaintiff's company could not provide RICO standing to the plaintiff even if it made his investment in the company worthless); *see also Uthe Tech. Corp. v. Aetrium Inc.*, 739 Fed. App'x. 903, 907 (9th Cir. 2018) ("[I]n the RICO context, it is suits for <u>derivative injuries</u> that are barred."); *Canyon County*, 519 F.3d at 981 (The "proximate cause requirement . . . bars RICO suits by derivative victims, or those whose injuries are 'purely contingent on the harm suffered by' direct victims."); *Rote v. Silicon Valley Bank, Inc.*, 2016 WL 4565776, at *7 (D. Or. Sept. 1, 2016) (noting a company "was the direct victim of the alleged racketeering activity" and holding the plaintiff did not have standing); *Cesare v. Pima, County of*, 2015 WL 13741218, at *11 (D. Ariz. Dec. 7, 2015), *report and recommendation adopted sub nom. Cesare v. Pima County*, 2016 WL 836873 (D. Ariz. Mar. 4, 2016) (holding the plaintiff lacked RICO standing where the defendants allegedly tried to force his business and him to pay for infrastructure improvements because "the reality is that it is the LLC's responsibility as the master developer to pay for the road improvements"). Therefore, Plaintiff cannot cure her failure to allege a RICO injury by speculating about unalleged, derivative effects of the tax liability.

ii. <u>The alleged failure to pay purported amounts that were never owed to Plaintiff does not confer statutory standing.</u>

In her Seventh Cause of Action, Plaintiff references the supposed deprivation of amounts to be paid under a vaguely described "agreement." (SAC, Dkt. No. 41, ¶ 112.) According to the Second Amended Complaint, Cleveland Design Consultants – rather than Plaintiff personally – was supposed to be a party to this "agreement." (*Id.* ¶ 21 (referring to "a supposed 'contract' with an alleged entity that WARNER created," which is subsequently identified as Cleveland Design Consultants).) Moreover, Plaintiff does not allege any facts showing such an "agreement" was ever validly formed. To the contrary, Plaintiff affirmatively alleges the "agreement" was "*fictitious*." (*Id.* ¶ 112 (emphasis added); *see also id.* ¶ 21 (referring to a "supposed" agreement and putting quote marks around the word "contract"). Plaintiff's own

allegations thus affirmatively state that the "agreement" referenced in paragraph 112 is not an enforceable contract.

The failure to make payments provided for in a "fictitious" agreement with Cleveland Design Consultants does not constitute an injury to Plaintiff that is cognizable under RICO. As an initial matter, a RICO plaintiff must establish an injury to its "business or property" to establish standing. *Canyon County*, 519 F.3d at 975. However, a "*fictitious* agreement," (SAC, Dkt. No. 41, ¶ 112) as a matter of law cannot create any property right to future payments under the "agreement." Plaintiff thus has not alleged facts showing that Warner deprived her of "business or property" to which she had a legal entitlement. *Hill*, 841 F. Supp. 2d at 1099-100 (dismissing a RICO claim where the plaintiffs failed to allege facts showing they had a specific right to the funds at issue). Next, the "fictitious agreement" was not supposed to be with Plaintiff, but rather with Cleveland Design Consultants. (SAC, Dkt. No. 41, ¶ 21.) That means the failure to pay amounts owed under the "fictitious agreement" would have harmed Cleveland Design Consultants directly and at most would have only affected Plaintiff derivatively. As explained in the prior section of this motion, such a derivative injury cannot provide standing under RICO. *E.g., Ahn*, 471 Fed. App'x. at 617; *Pac. Recovery Sols. v. United Behavioral Health*, 481 F. Supp. 3d 1011, 1026 (N.D. Cal. 2020) (holding that the non-payment of amounts owed to the plaintiff by its patients was an unactionable derivative injury even though the non-payment was caused by the defendant's conduct).

Finally, the proximate causation standard under RICO is satisfied only when the RICO violation itself is the cause of the injury. *Canyon County*, 519 F.3d at 981; *Quillinan*, 2018 WL 2151936, at *5. Here, though, the alleged racketeering activity of identity theft and wire fraud on which Plaintiff relied did not cause the deprivation of the amounts purportedly provided for in the "fictitious agreement." Instead, the alleged failure to pay was a separate and independent cause of any such injury. *See Hunt v. Zuffa, LLC*, 361 F. Supp. 3d 992, 1003 (D. Nev. 2019) (holding the

20

cancellation of appearances, decreased advertising revenue, and lost licensing and book sales was the result of independent causes, not the alleged scheme to allow doped fighters to compete in UFC bouts); *Quillinan*, 2018 WL 2151936, at *5 (dismissing a RICO claim predicated on an eviction from a storage space where the eviction was not caused by the predicate acts).   For these three separate and independently adequate reasons, the alleged deprivation of amounts to be paid under the "fictitious agreement" does not give Plaintiff statutory standing under RICO.

               iii.   <u>Any alleged personal injury suffered by Plaintiff cannot confer statutory standing.</u>

In her Seventh Cause of Action, Plaintiff makes a somewhat passing reference to the "identity theft" that she alleges occurred in the formation of Cleveland Design Consultants.  (SAC, Dkt. No. 41, ¶¶ 110, 113.)  For the purposes of this motion only, Defendants must accept Plaintiff's allegation documents containing her signature are "inauthentic" and were improperly used to form Cleveland Design Consultants. Even if that allegation must be accepted, though, the occurrence of identity theft still does not provide standing under RICO.  As already noted, RICO requires an injury to "business or property."  *Canyon County*, 519 F.3d at 975.   Personal injuries, including emotional distress or other dignitary or privacy harms, are inadequate to establish standing under RICO.  *Ainsworth v. Owenby*, 326 F. Supp. 3d 1111, 1123 (D. Or. 2018); *see also Oren v. Dromy*, 2019 WL 12383079, at *1 (C.D. Cal. Nov. 21, 2019).  Therefore, the supposed theft of Plaintiff's identity is not a cognizable RICO injury.

**3.  Plaintiff Has Not Alleged the Existence of an Enterprise.**

Where, as in this case, a plaintiff's claim sounds in fraud, Federal Rule of Civil Procedure 9(b) requires that she "state with particularity the circumstances constituting the fraud."  FED. R. CIV. P. 9(b).  Under this standard, the plaintiff must allege the "who, what, when, where, and how of the misconduct charged."  *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1053 (C.D. Cal. 2016) (quoting *Vess v.*

1    *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 11106 (9th Cir. 2003)) (internal quotation
2    marks omitted).  It is not sufficient to "lump together multiple defendants" or assert
3    that unlawful acts occurred without detailing the time, place, and manner of each
4    such act.  *Id.*  The heightened pleading requirement applies to the enterprise element
5    of a RICO claim.  *Ellis v. J.P. Morgan Chase & Co.*, 2015 WL 78190, at *5 n.5
6    (N.D. Cal. Jan. 6, 2015).

7         Plaintiff has had three opportunities to plead the existence of an enterprise in
8    accordance with these requirements.  However, even though Defendants expressly
9    identified the inadequacy of her allegations during the parties' meet and confer
10   efforts, Plaintiff still comes nowhere close to alleging the facts necessary to plead
11   there was an enterprise within the meaning of RICO.  In the Second Amended
12   Complaint, Plaintiff asserts that Warner formed an enterprise with unidentified
13   "individuals who assisted him in his financial and legal affairs." (SAC, Dkt. No. 42,
14   ¶ 92.)  However, Plaintiff does not identify who any of these other individuals are,
15   state what each member of the enterprise purportedly did, or describe how they
16   functioned as a continuing unit.  Plaintiff instead offers only conclusory allegations
17   that lump all the purported members of the enterprise together and rely on boilerplate
18   language.

19        The existence of an "enterprise" is an essential element of a RICO claim.
20   *Aversano v. Greenberg Traurig, LLP*, 753 F. Supp. 2d 1063, 1065 (C.D. Cal. 2010).
21   To plead the existence of an enterprise, a plaintiff must allege facts showing an
22   "'ongoing organization, formal or informal,' that 'function[s] as a continuing unit.'"
23   *Id.* (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  The enterprise
24   may take the form either of a legal entity (such as corporations or partnerships) or an
25   "association-in-fact."  *Shaw*, 220 F. Supp. 3d at 1053.  The latter, which Plaintiff
26   appears to rely on in this case, requires "a group of persons associated together for a
27   common purpose of engaging in a course of conduct."  *Id.* (quoting *Boyle v. United*
28   *States*, 556 U.S. 938, 946 (2009)).

An associated-in-fact enterprise "must have at least three structural features: [1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 1054 (quoting *Boyle*, 556 U.S. at 945). Bare assertions that persons conspired with or assisted each other is not enough. *Doan v. Singh*, 617 Fed. App'x. 684, 686 (9th Cir. 2015). Instead, a plaintiff must allege facts showing "what exactly each individual did, when they did it, or how they functioned together as a continuing unit." *Id.*

Plaintiff's conclusory allegations are insufficient to properly plead any of the three structural features of an association-in-fact. The first feature requires factual allegations showing that everyone acted with the same purpose in mind. *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1173 (E.D. Cal. 2017); *Ellis*, 2015 WL 78190, at *5 (failing to allege that non-defendant members of enterprise knew of or had same purpose). Yet Plaintiff only alleges that the members of the purported enterprise in this case "had a common purpose" without any supporting facts. (SAC, Dkt. No. 41, ¶ 95; *see also id.* ¶ 96); *see Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d at 1173-74 (dismissing a RICO claim where plaintiff did not allege specific facts showing the individual members of an enterprise had a common purpose).

The second structural feature requires particular allegations of a connection, structure, or coordination of the members of the enterprise. *Comm. to Protect our Agric. Water*, 235 F. Supp. 3d at 1173-74; *Big O Relief v. County of Kern*, 2018 WL 1210976, at *9 (E.D. Cal. Mar. 8, 2018). In other words, the allegations must show "'some participation in the operation or management of the enterprise' by the members." *Comm. to Protect our Agric. Water*, 235 F. Supp. 3d at 1173-74 (quoting *Reves v. Ernst & young*, 507 U.S. 170, 176 (1993)). The Second Amended Complaint contains no such allegations. Indeed, Plaintiff does not even allege what role any particular member of the enterprise filled, how the members coordinated

23

their actions, how decisions were made, or how compliance with the enterprise's purported goal was enforced. *Id.* at 1173.

Finally, the third structural feature requires allegations showing joint action among the members of the enterprise over a period of time. *Id.* at 1175-76. Here, although Plaintiff alleges that certain components of the supposed scheme (such as the wire transfers to Cleveland Design Consultants) occurred over a period of more than 12 months, she does not allege which members of the supposed scheme were involved in any particular acts or at what particular time. *See id.* (holding it is not enough to allege isolated incidents over a lengthy period of time that might have involved some but not all the members).

In the Second Amended Complaint, Plaintiff's allegations offers nothing more than vague, conclusory allegations that some amorphous RICO enterprise exists. She does not allege facts sufficient to support any of the three required features of an associated-in-fact enterprise. Plaintiff's failure to properly plead the existence of an enterprise under both the plausibility standard and the heightened pleading standard imposed by Rule 9(b) provides yet another independently sufficient basis for dismissal of her RICO claim.

## C.   **PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO RE-PLEAD.**

A dismissal without leave to amend is proper if either a plaintiff has repeatedly failed to cure deficiencies or an amendment would be futile. *Palantir Techs. Inc.*, 2021 WL 2400979, at *4. Both of those conditions are satisfied here. During four months of litigation, Plaintiff has now filed three complaints.[2] (Dkt. Nos. 1-1, 22, 41.) Through the course of those amendments, Defendants expressly identified the deficiencies raised in this motion. However, Plaintiff has repeatedly failed to cure them. Yet another amendment by Plaintiff would be futile because Plaintiff's quiet

---

[2] Prior to the initiation of this case, Plaintiff had more than ten months to investigate and develop her potential claims. (*See* SAC, Dkt. No. 41, ¶ 21 (alleging that Plaintiff's counsel had developed "anticipated legal claims" as early as January 2021).)

title claim and RICO claim are not legally cognizable.  The flaws in those claims identified in Section III of this motion arise from threshold legal principles and cannot be cured by any amendment.  Thus, Plaintiff should not be given a fourth opportunity to try to plead a quiet title claim or a RICO claim.

## IV.   CONCLUSION

For the reasons stated above, Defendants H. Ty Warner and Fairway BB Property, LLC respectfully request that the Court dismiss, without leave to amend, Plaintiff Kathryn Zimmie's claims for Quiet Title (Third Cause of Action) and Fraud/Civil RICO (Seventh Cause of Action).

Dated:  January 4, 2022

By: */s/ **Jared M. Katz***

Jared M. Katz (SBN 173388)
jkatz@mullenlaw.com
MULLEN & HENZELL L.L.P.
112 East Victoria Street
Santa Barbara, CA  93101
Telephone:      (805) 966-1501
Facsimile: (805) 966-9204

Gregory J. Scandaglia (pro hac vice)
gscandaglia@scandagliaryan.com
Therese L. Tully (pro hac vice)
ttully@scandagliaryan.com
SCANDAGLIA RYAN LLP
55 East Monroe Street, Suite 3440
Chicago, IL 60603
Telephone: (312) 580-2020
Facsimile: (312) 782-3806

*Attorneys for Defendants H. Ty Warner and Fairway BB Property, LLC*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28