Jared M. Katz (SBN 173388)
    jkatz@mullenlaw.com
MULLEN & HENZELL L.L.P.
112 East Victoria Street
Santa Barbara, CA  93101
Telephone: (805) 966-1501
Facsimile: (805) 966-9204

Gregory J. Scandaglia (pro hac vice)
    gscandaglia@scandagliaryan.com
Therese L. Tully (pro hac vice)
    ttully@scandagliaryan.com
SCANDAGLIA RYAN LLP
55 East Monroe Street, Suite 3440
Chicago, IL 60603
Telephone: (312) 580-2020
Facsimile: (312) 782-3806

*Attorneys for Defendant H. Ty Warner
and Fairway Property BB, LLC*

# IN THE UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN ZIMMIE,<br><br>Plaintiff,<br><br>v.<br><br>H. TY WARNER, and FAIRWAY BB PROPERTY, LLC,<br><br>Defendants. | **Case No. 21-cv-07853-AFM**<br><br>**DEFENDANT H. TY WARNER'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED [DKT. NO. 10]**<br><br>Judge: Hon. Alexander F. MacKinnon |

Defendant H. TY WARNER ("Defendant"), by and through his attorneys, SCANDAGLIA RYAN LLP and MULLEN & HENZELL L.L.P., hereby answers Plaintiff's Second Amended Complaint[1] as follows:

## FIRST CAUSE OF ACTION

(Damages Based Upon Breach of Express Contract)

1.     Plaintiff, ZIMMIE, is domiciled in the State of California, County of Los Angeles, at the time of the filing of the instant action.

**ANSWER:**     Defendant avers that Paragraph 1 states legal conclusions relating to Plaintiff's domicile as to which no response is required.  To the extent that a response is required, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 1, and therefore denies the same.

2.     Defendant, WARNER, per his own affirmation is domiciled in the State of California. He has been living consecutively in California, County of Santa Barbara, at the time of the filing of the instant action for nearly two straight years at the property in question and a substantial part of the events in question involving the matters of this Complaint occurred in California.

**ANSWER:**     Defendant avers that Paragraph 2 states legal conclusions relating to Defendant's domicile as to which no response is required.  To the extent that a response is required, Defendant denies the allegations contained in the first sentence of Paragraph 2.  With respect to the remaining allegations contained in Paragraph 2, Defendant states that he is domiciled in Illinois and has been an Illinois citizen for many years.  Defendant has been staying in California on a temporary and transitory basis

[1] On February 15, 2022, the Court granted the Defendants' Motion to Dismiss the Third and Seventh Causes of Action in the Second Amended Complaint. Although the Court granted Plaintiff leave to replead those counts by March 9, 2022, Plaintiff did not replead either of the dismissed counts.  Defendant FAIRWAY BB PROPERTY, LLC ("FAIRWAY") was only named as a defendant in connection with the Third Cause of Action of the Second Amended Complaint.  Accordingly, FAIRWAY is no longer a party and no answer by FAIRWAY is required.  Plaintiff joined a stipulation providing as much (Dkt. No. 52 at 2 n.1), and the Court subsequently entered an order pursuant to that stipulation (Dkt. No. 53).

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

since February 2020 due to the Covid-19 pandemic.  Defendant denies the remaining allegations contained in Paragraph 2.

     3.     Defendant, FAIRWAY, is a Delaware Limited Liability Corporation which owns and holds title to property at issue in this dispute located at 1000 Channel Drive, Santa Barbara, CA 93108.

     **ANSWER:**   Defendant admits that Fairway BB Property, LLC is a Delaware limited liability corporation which owns and holds title to the property located at 1000 Channel Drive, Santa Barbara, CA 93108.  Defendant denies the remaining allegations in Paragraph 3.

     4.     ZIMMIE and WARNER first met in 1977 and began an off and on personal relationship that continued through the mid-1980s. During this period of time, WARNER was fired from Dakin and was experiencing significant financial difficulties. He relied on ZIMMIE for financial support – she provided him significant support (i.e., in excess of one hundred thousand dollars). Additionally, WARNER relied upon ZIMMIE for usage of her automobile for his own personal use. It was this support, assistance and generosity by ZIMMIE that helped WARNER launch his billion-dollar bean bag toy business, "Ty, Inc."

     **ANSWER:**   Defendant admits that he met Plaintiff in the late 1970s and that he has had a personal relationship with her at certain times.  Defendant denies the remaining allegations in Paragraph 4.

     5.     After WARNER launched Ty, Inc., ZIMMIE and WARNER rekindled their personal relationship in the late 1990s. WARNER and ZIMMIE's close personal relationship lasted through November 2020.

     **ANSWER:**   Defendant admits that Plaintiff and he had a personal relationship during certain times within the period from approximately the late 1990s until 2020. Defendant denies the remaining allegations in Paragraph 5.

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

6.     The personal relationship between ZIMMIE and WARNER was serious and significant – in addition, in the early 2000s, WARNER and ZIMMIE agreed that ZIMMIE would assist WARNER with his business affairs.

**ANSWER:**     Defendant admits that, at times, Plaintiff and he had a personal relationship and that, at times, Plaintiff and/or her companies performed limited tasks related to Defendant's businesses.   Defendant denies the remaining allegations in Paragraph 6.

7.     Around 2001, WARNER started construction on his dream home (now likely worth more than $400 million dollars) in Montecito, California located at 1000 Channel Drive, Santa Barbara, CA 93108. WARNER and ZIMMIE cohabitated in this home, beginning in 2010 upon completion of the construction. They were domiciled there, together, until November 2020. The aforementioned home included a bedroom built and designed for ZIMMIE's granddaughter and an art studio made exclusively for ZIMMIE.

**ANSWER:**     Defendant denies the allegations in Paragraph 7.

8.     In 2006, the parties entered into an oral agreement involving various mutual promises including but not limited to:

a.     WARNER promised ZIMMIE that he would always provide for her and financially support her. Specifically, WARNER promised, on numerous occasions, that he "would always take care of her (ZIMMIE)" in consideration of ZIMMIE providing companionship to WARNER, supporting him emotionally in both his personal and professional life, and acting as his confidante, helpmate, and partner;

b.     ZIMMIE agreed to devote her time and attention to WARNER's personal and business needs and fostered and perpetuated their relationship in consideration of WARNER's continued and repeated assurances that she would always be financially secure;

4

c.    WARNER promised ZIMMIE throughout the course of the parties' relationship that she and WARNER were equal partners in their mutual endeavors and that she would always be financially secure in exchange for giving up her own career opportunities and advancements.

**ANSWER:**    Defendant denies the allegations in Paragraph 8.

9.    In furtherance of these agreements, WARNER expressed his desire to marry ZIMMIE and desired a pre-nuptial agreement. The proposed agreement, which was never executed, promised to take care of ZIMMIE fairly and forever.

**ANSWER:**    Defendant denies the allegations in Paragraph 9.

10.    WARNER formally proposed and promised marriage to ZIMMIE on dozens of occasions beginning around 2002. WARNER wrote his promise of marriage on a note that ZIMMIE kept in her possession until later she found that it was stolen and destroyed by WARNER. Furthermore, WARNER discussed various elaborate wedding plans with ZIMMIE to occur in Las Ventanas, Mexico and/or Santa Barbara, California. In furtherance of this action, WARNER held himself out to the public as married by telling people that he was married to ZIMMIE and by also wearing a wedding ring, beginning by 2005. ZIMMIE also wore a wedding ring and they held themselves out to the public as married. In 2010, WARNER in fact provided ZIMMIE with an engagement ring. WARNER additionally asked that he be named the beneficiary of ZIMMIE's Last Will and Testament.

**ANSWER:**    Defendant denies the allegations in Paragraph 10.

11.    Pursuant to and in confirmation of and in reliance upon the said agreement, WARNER and ZIMMIE maintained a "marriage-like" relationship from approximately 2000 to 2020.

**ANSWER:**    Defendant denies the allegations in Paragraph 11.

12.    Throughout this time, ZIMMIE and WARNER created a familial relationship and treated each other's family as their own. For example, WARNER purchased a home for ZIMMIE's daughter. WARNER also took ZIMMIE's daughter

5

and granddaughter with them on vacations to Mexico, Connecticut and Disneyworld. WARNER often drove ZIMMIE's daughter to school and, in fact, taught ZIMMIE's daughter how to drive.

**ANSWER:**    Defendant denies the allegations in the first sentence of Paragraph 12.  Defendant admits that he paid off the mortgage on Plaintiff's daughter's home and that he paid for Plaintiff's daughter and granddaughter to go on some vacations taken by Defendant.  Defendant admits that, at times, he drove Plaintiff's daughter to school. Defendant denies the remaining allegations in Paragraph 12.

13.    During the parties' relationship, WARNER and ZIMMIE enjoyed an elaborate standard of living travelling domestically and internationally to destinations around the globe including Asia, Chicago, Germany, Morocco, Europe, Italy, England, California, New York. It was during the period of time of their relationship from 1998 to 2020 that WARNER started and grew his property business with acquisitions of the Four Seasons Biltmore, the Four Seasons in New York, San Ysidro Rancho, Las Ventanas al Paraiso, Sandpiper Golf Course, Coral Casino in Santa Barbara, Montecito Country Club. In fact, WARNER made the San Ysidro Ranch redecoration ZIMMIE's project - for which she received two prestigious awards for its décor.

**ANSWER:**    Defendant admits that, at times, Plaintiff and he traveled domestically and internationally.  Defendant admits that certain business entities associated with Defendant purchased the following commercial properties: the Four Seasons Resort The Biltmore Santa Barbara and The Coral Casino Beach and Cabana Club in approximately 2000; Four Seasons Hotel New York in approximately 1999; San Ysidro Ranch in approximately 2000; Las Ventanas al Paraiso in approximately 2004; Sandpiper Golf Course in approximately 2003; and The Montecito Club in approximately 2004.  Defendant admits that Plaintiff and/or her companies at times performed limited tasks related to Defendants' businesses and that some such tasks were related to the redecoration of certain cottages at the San Ysidro Ranch.  Defendant

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

admits that San Ysidro Ranch has received various awards over the years.  Defendant denies the remaining allegations in Paragraph 13.

14.   Throughout the parties' relationship, the agreement between WARNER and ZIMMIE was reaffirmed and ratified by the parities both verbally and by their conduct.

**ANSWER:**   Defendant denies the allegations in Paragraph 14.

15.   Pursuant to WARNER's promise to ZIMMIE, WARNER did in fact pay for all their living expenses. WARNER paid for all ZIMMIE's expenses and needs until she left him in November 2020 due to fear for her safety and well-being.

**ANSWER:**   Defendant denies the allegations in Paragraph 15.

16.   In reliance on WARNER's promises that she would always be taken care of, ZIMMIE devoted every hour of her life for seven days per week, for decades, fostering her relationship with WARNER and supporting WARNER, both professionally and personally. She travelled the world with him, attending trade shows and conferences, accompanying WARNER on business trips and inspections of manufacturing plants, creating designs for his companies, decorating his San Ysidro Ranch on two separate occasions, decorating other of WARNER's hotels, creating artwork for WARNER's businesses, creating artwork for WARNER's personal use, decorating their aforementioned home in Montecito, creating advertisements for his properties, and designing menus at his restaurants.

**ANSWER:**   Defendant denies the allegations in the first sentence of Paragraph 16.  Defendant admits that Plaintiff, at times, traveled with him to attend certain trade shows and conferences and was present at times with Defendant when he went on certain business trips or certain inspections of manufacturing plants.  Defendant admits that Plaintiff performed limited tasks related to Defendants' businesses.  Defendant admits that some such tasks were related to the San Ysidro Ranch or certain other properties owned by Defendant's companies.   Defendant denies the remaining allegations in Paragraph 16.

7

17.   Throughout the parties' relationship, in further reliance on WARNER's promises, ZIMMIE passed up various career opportunities that would have benefitted her and provided financial stability. Instead, ZIMMIE spent seven days a week working and living with WARNER. In turn, WARNER always promised to financially provide for her for the rest of her life.

**ANSWER:**   Defendant denies the existence of any purported agreement and further denies the allegations in Paragraph 17.

18.   ZIMMIE has at all times performed each and every covenant and condition to be performed by her for the benefit of the parties.

**ANSWER:**   Defendant denies the existence of any purported covenants and/or conditions and further denies the allegations in Paragraph 18.

19.   During the time ZIMMIE and WARNER maintained their relationship, WARNER acquired substantial personal, business and real property holdings as discussed above.

**ANSWER:**   Defendant admits that, during the course of his professional life, his companies and he have acquired personal, business, and/or real property holdings. Defendant denies the remaining allegations in Paragraph 19.

20.   The above referenced services that ZIMMIE performed for WARNER and the contribution of ZIMMIE's skills, expertise, efforts and labor - pursuant to the terms of said agreement - were mutually bargained for by the parties and are adequate consideration for the providing to ZIMMIE of promised interests in financial, personal, real property and other business interests, to render ZIMMIE financially secure and that said agreement was and is just, fair, reasonable and equitable in all respects.

**ANSWER:**   Defendant denies the allegations in Paragraph 20.

21.   WARNER has failed to honor his promises to ZIMMIE. Counsel for ZIMMIE reached out to counsel for WARNER to discuss a resolution of the anticipated legal claims in January 2021. In response, Counsel for ZIMMIE was notified by counsel for WARNER that he demanded the return of her mobile devices, computers,

tablets and the like that he allegedly purchased. He also advised that he was cancelling a supposed "contract" with an alleged entity that WARNER created and referred to as ZIMMIE's business which was apparently being paid $200,000 annually since 2018. ZIMMIE returned the items but to this day is unaware of any business nor did she personally receive any compensation from WARNER. Rather, she is now left, at age eighty-five (85) with debt on a credit card and an overdue tax bill.

**ANSWER:**    Defendant denies the existence of any purported promises and further denies the allegations in the first sentence of Paragraph 21.  Defendant admits that, at some time during approximately early 2021, counsel for Defendant engaged in certain discussions with counsel for Plaintiff about various matters but denies the characterization of such discussions.  Defendant denies the remaining allegations of Paragraph 21.

22.  By reason of the refusal by WARNER to honor said oral agreement as set forth herein above, WARNER has breached said agreement.

**ANSWER:**    Defendant denies the existence of any purported oral agreement and further denies all allegations in Paragraph 22.

23.  As a proximate cause of said breach of contract, ZIMMIE has been damaged in an amount in excess of the jurisdictional limits of this Court.

**ANSWER:**    Defendant denies the existence of any purported contract and further denies all allegations in Paragraph 23.

24.  WARNER should be further estopped to raise any section of the Statute of Frauds as his actions and representations caused ZIMMIE to detrimentally rely on their agreement and that WARNER, in turn, would be unconscionably and unjustly enriched.

**ANSWER:**    Defendant denies the allegation of Paragraph 24.

**SECOND CAUSE OF ACTION**

(For Damages Based on Breach of Implied in Fact Contract)

25.   Plaintiff incorporates paragraphs 1 through 24, inclusive of this Complaint as though fully set forth herein.

**ANSWER:**   Defendant hereby incorporates by reference his responses to the allegations contained in Paragraphs 1 to 24, inclusive, as though fully restated herein, in answer to Plaintiff's adoption and incorporation of said same paragraphs of the Complaint.

26.   During the entirety of their relationships, as part of an implied agreement with WARNER at said time and continuing thereafter, ZIMMIE gave up her goals and career opportunities which would have benefitted her. As part of said implied agreement, ZIMMIE devoted her skills, efforts, expertise and labor in furtherance of the agreement entered into between the parties and in maintaining ZIMMIE and WARNER's relationship wherein ZIMMIE acted as WARNER's companion, protector, confidante, and helpmate thereby satisfying all of WARNER's personal needs.

**ANSWER:**   Defendant denies the existence of any implied agreement and further denies all allegations in Paragraph 26.

27.   WARNER understood that ZIMMIE was contributing her skills, efforts, expertise and labor to WARNER and that WARNER would treat ZIMMIE fairly for the rest of her life.

**ANSWER:**   Defendant denies the allegation of Paragraph 27.

28.   WARNER manifested his assent to the conditions on which ZIMMIE performed, expended and contributed her skills, efforts, expertise and labor as herein described, by accepting her skills, efforts, expertise and labor and treating her skills, efforts, expertise and labor as property of both ZIMMIE and WARNER.

**ANSWER:**   Defendant denies the existence of any alleged conditions and further denies all of the allegations in Paragraph 28.

29.   During the course of time that ZIMMIE and WARNER maintained their relationship, said parties conducted their relationship in a manner and with similar force and effect as would a married couple and in doing so, dealt with each other in a fair and trusting manner, thereby creating in both ZIMMIE and WARNER a reasonable expectation between the parties as follows:

a.   At WARNER's request, ZIMMIE gave up various goals and opportunities which would have benefitted her in the future so that she would be able to devote all of her time and attention to WARNER's personal and professional needs, with the continued assurance that she would then and in the future, in the case of the termination of their relationship, obtain a fair and equitable division of the parties' assets and that she would be rendered financially secure for the remainder of her life;

b.   ZIMMIE acted as a partner, companion, protector, helpmate and confidante to WARNER;

c.   ZIMMIE devoted most aspects of her life to WARNER's needs, interests and well being to the exclusion of her own, making herself available to WARNER at all times;

d.   Throughout the period of time the parties' maintained their relationship, WARNER assured ZIMMIE that she would always be taken care of and would be rendered financially secure; and

e.   ZIMMIE enjoyed and maintained, during the course of the parties' relationship, a certain standard of living, which standard of living WARNER promised to maintain or exceed for ZIMMIE.

**ANSWER:**   Defendant denies the allegation of Paragraph 29.

30.   ZIMMIE devoted her time and attention to WARNER's personal needs with continued assurance during the course of the parties' relationship that she would be rendered financially secure.

**ANSWER:**   Defendant denies the allegation of Paragraph 30.

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

31.   In November 2020, ZIMMIE left WARNER for fear of her safety and well-being. In January of 2021, WARNER breached the agreement by refusing to resolve this dispute and then cutting off all benefits to ZIMMIE. WARNER remains in breach of the agreement existing between the parties.

**ANSWER:**   Defendant denies the existence of any such alleged oral or implied agreement and denies all of the allegations in Paragraph 31.

32.   ZIMMIE has at all times performed each and every covenant and condition by her to be performed and rendered services and contributing her skills, efforts, expertise and labor as required by the terms of the agreement between the parties.

**ANSWER:**   Defendant denies the existence of any covenants or conditions or any such alleged oral or implied agreement and further denies all allegations in Paragraph 32.

33.   The above referenced services that ZIMMIE performed for WARNER and the contribution of ZIMMIE's skills, efforts and labor under and pursuant to said agreement, were, and are, adequate consideration for the providing of the promised division of real and personal property holdings upon separation and the rendering of ZIMMIE as financially secure. Said agreement was and is fair, reasonable and equitable in all respects.

**ANSWER:**   Defendant denies the existence of any such alleged oral or implied agreement and further denies all allegations in Paragraph 33.

34.   As a proximate cause of said breach of the implied in fact contract, ZIMMIE has been damaged in an amount in excess of the jurisdictional limits of this Court.

**ANSWER:**   Defendant denies the existence of any such alleged oral or implied agreement and further denies all allegations in Paragraph 34.

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

**THIRD CAUSE OF ACTION**

(Quiet Title)

**[PLAINTIFF'S THIRD CAUSE OF ACTION HAS BEEN DISMISSED PURSUANT TO COURT'S ORDER OF FEBRUARY 15, 2022 (DKT. NO. 51).]**

35.   Plaintiff incorporates Paragraph 1 through 34, inclusive of this Complaint as though fully set forth herein.

**ANSWER:**   Because Plaintiff's Third Cause of Action was dismissed and Plaintiff elected not to replead it, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant incorporates by reference his responses to the allegations contained in Paragraphs 1 through 34.

36.   ZIMMIE, at all times herein mentioned, was the owner of an undivided one-half interest in the property located at 1000 Channel Drive, Santa Barbara, CA 93108.

**ANSWER:**   Because Plaintiff's Third Cause of Action was dismissed Plaintiff elected not to replead it, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant denies the allegations of Paragraph 36.

37.   ZIMMIE, at all times herein mentioned, was, and is, entitled to possession and control of the above-described real property.

**ANSWER:**   Because Plaintiff's Third Cause of Action was dismissed and Plaintiff elected not to replead it, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant denies the allegations of Paragraph 37.

38.   The legal description of the property at issue located at 1000 Channel Drive, Santa Barbara CA 93108 is identified in the March 24, 2004 Grant Deed, fully executed by Defendant WARNER and attached hereto in its entirety as Exhibit A.

**ANSWER:**   Because Plaintiff's Third Cause of Action was dismissed and Plaintiff elected not to replead it, no response to the allegations contained in this

Paragraph is required.  To the extent any response is required, Defendant states that the document referenced herein speaks for itself and denies the allegations contained in this Paragraph to the extent that they are inconsistent with the document referenced. Defendant denies the remaining allegations contained in Paragraph 38.

39.   The above-referenced property was purchased by WARNER for which he expressly stated and represented to ZIMMIE that the aforementioned property was their home together.

**ANSWER:**   Because Plaintiff's Third Cause of Action was dismissed and Plaintiff elected not to replead it, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant denies the allegations of Paragraph 39.

40.   The property at issue was transferred by WARNER from his company, HTW, LLC to Defendant FAIRWAY on March 24, 2004. Please see Exhibit A for a detailed legal description in the attached Grant Deed.

**ANSWER:**   Because Plaintiff's Third Cause of Action was dismissed and Plaintiff elected not to replead it, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant states that the document referenced herein speaks for itself and denies the allegations contained in this Paragraph to the extent that they are inconsistent with the document referenced. Defendant denies the remaining allegations of Paragraph 40.

41.  Defendant FAIRWAY is a Limited Liability Delaware Corporation recognized within the State of California at Secretary of State File Number 200407810198. A complete copy of this California Corporation Information is attached hereto as Exhibit B.

**ANSWER:**   Because Plaintiff's Third Cause of Action was dismissed and Plaintiff elected not to replead it, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant states that the document referenced herein speaks for itself and denies the allegations contained in

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

this Paragraph to the extent that they are inconsistent with the document referenced. Defendant denies the remaining allegations of Paragraph 41.

42.   As evidenced by Exhibit 2, Defendant WARNER is Chief Executive Officer, Sole Member, and Sole Manager of Defendant FAIRWAY.

**ANSWER:**   Because Plaintiff's Third Cause of Action was dismissed and Plaintiff elected not to replead it, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant states that the document referenced herein speaks for itself and denies the allegations contained in this Paragraph to the extent that they are inconsistent with the document referenced. Defendant admits that he is the Chief Executive Officer, sole member, and sole manager of Fairway BB Property, LLC.  Defendant denies the remaining allegations of Paragraph 42.

43.   Defendant FAIRWAY was formed on February 24, 2004 as a Real Estate Investment Business. See Exhibit B.

**ANSWER:**   Because Plaintiff's Third Cause of Action was dismissed and Plaintiff elected not to replead it, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant states that the document referenced herein speaks for itself and denies the allegations contained in this Paragraph to the extent that they are inconsistent with the document referenced. Defendant admits that Fairway BB Property, LLC was formed as a Delaware limited liability company on February 24, 2004.  Defendant denies the remaining allegations of Paragraph 43.

44.   The basis of ZIMMIE's claim to title is that during the course of their relationships, ZIMMIE and WARNER entered into an oral and/or implied in fact agreement(s) wherein ZIMMIE agreed to act as WARNER's companion, protector, confidante, advisor and helpmate. In exchange, WARNER promised to provide a home for ZIMMIE and render ZIMMIE financially secure for the rest of her life.

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

**ANSWER:**   Because Plaintiff's Third Cause of Action was dismissed and Plaintiff elected not to replead it, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant denies the allegations of Paragraph 44.

45.   Beginning around 2000, WARNER purchased the 1000 Channel Drive, Santa Barbara, CA 93108 property for both himself and ZIMMIE. From thereon after, the parties considered themselves to be equal owners of the aforementioned property, regardless of how title was held. To wit, there was an entire wing designed for, and used exclusively by, ZIMMIE as her art studio. All her paints, supplies, and a few pieces she was working on remain there to this day, along with her clothes and personal belongings. Further, ZIMMIE and WARNER travelled the world together, gathering unique and expensive artwork for the home. ZIMMIE furnished and decorated the home.

**ANSWER:**   Because Plaintiff's Third Cause of Action was dismissed and Plaintiff elected not to replead it, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant denies the allegations of Paragraph 45.

46.   ZIMMIE is informed and believes and thereon alleges that WARNER claims an interest in the above-described real property adverse to ZIMMIE's.

**ANSWER:**   Because Plaintiff's Third Cause of Action was dismissed and Plaintiff elected not to replead it, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant denies the allegations of Paragraph 46.

47.   As identified previously, and as evidenced at Exhibits A and B, Defendant WARNER is the sole owner, possessor, and interested party in control of the property at issue as described in the Grant Deed at Exhibit A, which is currently in name only to Defendant FAIRWAY.

**ANSWER:**   Because Plaintiff's Third Cause of Action was dismissed and Plaintiff elected not to replead it, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant admits that Fairway BB Property, LLC owns and holds title to the property located at 1000 Channel Drive, Santa Barbara, CA 93108.  Defendant denies the remaining allegations of Paragraph 47.

48.  WARNER owns the property at issue through Defendant FAIRWAY, which holds the deed to the property at issue and is wholly owned and operated by Defendant WARNER.

**ANSWER:**   Because Plaintiff's Third Cause of Action was dismissed and Plaintiff elected not to replead it, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant admits that Fairway BB Property, LLC owns and holds title to the property located at 1000 Channel Drive, Santa Barbara, CA 93108 and that Defendant is the sole member and manager of Fairway BB Property LLC.  Defendant denies the remaining allegations of Paragraph 48.

49.  The valid oral and/or implied in fact agreement(s) which exist between Defendant WARNER and Plaintiff ZIMMIE related to the ownership of the property is not subject to the California Statute of Frauds for the following reasons:

a.   The basis of ownership interest in the property is based on a valid agreement between the PARTIES;

b.   California recognizes palimony, which is based on agreements between partners, including the PARTIES in this matter; and,

c.   Statute of Frauds does not apply given that the claims at issue in this matter does not involve a claim of transfer in land, but rather seeks an ownership interest in property promised to Plaintiff ZIMMIE through a valid agreement(s) between the PARTIES.

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

**ANSWER:**   Because Plaintiff's Third Cause of Action was dismissed and Plaintiff elected not to replead it, no response to the allegations contained in this Paragraph is required.   To the extent any response is required, Defendant avers that subparagraphs b and c of Paragraph 49 contain legal conclusions as to which no response is necessary.   Answering further, Defendant denies the allegations of Paragraph 49.

50.   ZIMMIE is seeking to quiet title against the claim of WARNER as follows based on her shared interest in the property at issue:

a.   ZIMMIE and WARNER entered into a valid agreement(s) wherein ZIMMIE agreed to act as WARNER's companion, confidante and act as helpmate and partner and that she would support him emotionally in both his personal and professional life. WARNER promised to ZIMMIE that he would always provide for her and financially support ZIMMIE for the rest of her life; and

b.   As a result of the parties' aforementioned agreement, ZIMMIE and WARNER each have an undivided one-half ownership interest in the aforementioned property.

**ANSWER:**   Because Plaintiff's Third Cause of Action was dismissed and Plaintiff elected not to replead it, no response to the allegations contained in this Paragraph is required.   To the extent any response is required, Defendant denies the allegations of Paragraph 50.

51. ZIMMIE seeks to quiet title of the aforementioned property as of WARNER's date of purchase of the property, and for clarification, Plaintiff ZIMMIE is asserting these claims against Defendant WARNER individually, and against WARNER and FAIRWAY based on the WARNER's sole managing and controlling interest of the FAIRWAY company.

**ANSWER:**   Because Plaintiff's Third Cause of Action was dismissed and Plaintiff elected not to replead it, no response to the allegations contained in this

1   Paragraph is required.  To the extent any response is required, Defendant denies the

2   allegations of Paragraph 51.

3   **FOURTH CAUSE OF ACTION**

4   (Intentional Infliction of Emotional Distress)

5   52.  Plaintiff incorporates Paragraph 1 through 51, inclusive of this Complaint

6   as though fully set forth herein.

7   **ANSWER:**   Defendant hereby incorporates by reference his responses to the

8   allegations contained in Paragraphs 1 to 51, inclusive, as though fully restated herein,

9   in answer to Plaintiff's adoption and incorporation of said same paragraphs of the

10  Complaint.

11  53.  In 2012, at a bathroom in the Four Seasons New York hotel owned by

12  WARNER, ZIMMIE announced that she was leaving WARNER. WARNER placed

13  his hand around ZIMMIE's throat and stated "I wouldn't do that if I were you."

14  WARNER had squeezed ZIMMIE's throat so hard that she realized that her life was

15  in in danger if she ever left him.

16  **ANSWER:**   Defendant denies the allegations of Paragraph 53.

17  54.  Continuing  after  the  date  of  this  incident,  WARNER's  continued

18  controlling conduct caused her to suffer severe emotional distress. For example, on one

19  occasion, ZIMMIE had an ankle injury which caused her to be unstable on her feet and

20  eventually led to her requiring the use of a cane to assist with her mobility. WARNER

21  would constantly berate her, in public, need to require a cane or need assistance stating

22  the "ground was flat" and "You're fine." The verbal and demonstrable abuse became

23  more outrageous in 2019 and 2020 when WARNER would physically hide ZIMMIE's

24  cane so that she would not use it. When ZIMMIE could not locate the cane, she would

25  hold onto things to keep her stable around their Montecito home and WARNER would

26  exclaim to her "why are you hanging onto things? You look ridiculous."

27  **ANSWER:**   Defendant denies the allegations of Paragraph 54.

28

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

55.   WARNER's conduct was continually verbally and emotionally abusive over the course of their relationship. She was never allowed to leave his side for the last 20 years. When she would leave the room they were in together, WARNER would immediately start yelling for her "Katie, Katie, Katie!" WARNER, by example, would often be rude and loud when ZIMMIE did not finish a meal stating to ZIMMIE "why can't you finish that! It costs money!" Even if she coughed, WARNER would tell her that he was irritated and would yell at ZIMMIE to "go to the hospital as I can't stand that coughing!"

**ANSWER:**   Defendant denies the allegations of Paragraph 55.

56.   When ZIMMIE tried to leave the first time in November of 2020 WARNER saw her suitcases by the door and stated "nobody is going anywhere." ZIMMIE retreated to her room and WARNER accused her of "upsetting everyone like that."

**ANSWER:**   Defendant denies the allegations of Paragraph 56.

57.   ZIMMIE was watched 24/7 by WARNER with the cameras everywhere in their homes and businesses. ZIMMIE was fearful of her well-being and confided in a friend to keep searching for her if she ever turned up missing.

**ANSWER:**   Defendant denies the allegations of Paragraph 57.

58.   WARNER's statements and actions intended to cause ZIMMIE's emotional distress and WARNER acted with reckless disregard that his actions would cause ZIMMIE emotional distress.

**ANSWER:**   Defendant denies the allegations of Paragraph 58.

59.   ZIMMIE did in fact suffer severe emotional distress.

**ANSWER:**   Defendant denies the allegations of Paragraph 59.

60.   WARNER's conduct was a substantial factor in causing ZIMMIE's severe emotional distress and as a result she has been damaged in an amount in excess of the jurisdictional limits of this Court.

**ANSWER:**   Defendant denies the allegations of Paragraph 60.

**FIFTH CAUSE OF ACTION**

(Negligent Infliction of Emotional Distress)

61.  Plaintiff incorporates Paragraph 1 through 60, inclusive of this Complaint as though fully set forth herein.

**ANSWER:**  Defendant hereby incorporates by reference his responses to the allegations contained in Paragraphs 1 to 60, inclusive, as though fully restated herein, in answer to Plaintiff's adoption and incorporation of said same paragraphs of the Complaint.

62.  WARNER owed a duty of care at all times to ZIMMIE during the course of their agreement and relationship.

**ANSWER:**  Defendant avers that Paragraph 62 states legal conclusions as to which no response is required.  To the extent any response is required, Defendant denies the allegations of Paragraph 62.

63.  WARNER negligent acted and breached that duty of care to ZIMMIE in 2012 at a bathroom in the Four Seasons New York hotel owned by WARNER, ZIMMIE announced that was leaving WARNER after another one of his broken promises. WARNER then proceeded to put his hands around ZIMMIE's throat and stated "I wouldn't do that if I were you." He had squeezed her throat so hard that she realized that her life was in danger if she ever left her.

**ANSWER:**  Defendant denies the allegations of Paragraph 63.

64.  Continuing after the date of this incident, ZIMMIE claims that WARNER's continued conduct caused her to suffer severe emotional distress.

**ANSWER:**  Defendant denies the allegations of Paragraph 64.

65.  ZIMMIE had an ankle injury which caused her to be unstable on her feet and eventually led to her requiring the use of a cane to assist with her mobility. WARNER would constantly berate her need to require a cane or need assistance stating the "ground was flat" and "You're fine." The verbal and demonstrable abuse became more outrageous in 2019 and 2020 when WARNER would physically hide ZIMMIE's

21

cane so that she would not use it. When ZIMMIE could not locate the cane, she would hold onto things to keep her stable around their Montecito home and WARNER would exclaim to her "why are you hanging onto things? You look ridiculous."

**ANSWER:**     Defendant denies the allegations of Paragraph 65.

66.   WARNER's conduct was continually verbally abusive over the course of their relationship. She was never allowed to leave his side for the last 20 years. When she would leave the room they were in together, WARNER would immediately start yelling for her "Katie, Katie, Katie!"

**ANSWER:**     Defendant denies the allegations of Paragraph 66.

67.   When ZIMMIE tried to leave the first time in November of 2020, WARNER saw her suitcases by the door and stated "nobody is going anywhere." ZIMMIE retreated to her room and WARNER accused her of "upsetting everyone like that."

**ANSWER:**     Defendant denies the allegations of Paragraph 67.

68.   ZIMMIE was watched 24/7 by WARNER with the cameras everywhere in their homes and businesses. ZIMMIE was fearful of her well-being and confided in a friend to keep searching for her if she ever turned up missing.

**ANSWER:**     Defendant denies the allegations of Paragraph 68.

69.   WARNER, by example, would often be rude and loud when ZIMMIE did not finish a meal stating to ZIMMIE "why can't you finish that! It costs money!"

**ANSWER:**     Defendant denies the allegations of Paragraph 69.

70.   Even if she coughed, WARNER would tell her that he was irritated and would yell at ZIMMIE to "go to the hospital as I can't stand that coughing!"

**ANSWER:**     Defendant denies the allegations of Paragraph 70.

71.   WARNER overt statements intended to cause ZIMMIE's emotional distress and WARNER acted with reckless disregard that his actions would cause ZIMMIE emotional distress.

**ANSWER:**     Defendant denies the allegations of Paragraph 71.

72.   ZIMMIE did in fact suffer severe emotional distress. This is proven by the fact that she fled fearing for her well-being in November 2020.

**ANSWER:**   Defendant denies the allegations of Paragraph 72.

73.   WARNER's negligence was a substantial factor in causing ZIMMIE's serious emotional distress.

**ANSWER:**   Defendant denies the allegations of Paragraph 73.

74.   ZIMMIE has been harmed in that she suffers from anguish, fright, horror, anxiety, nervousness, worry and shame and has been damaged in an amount in excess of the jurisdictional limits of this Court.

**ANSWER:**   Defendant denies the allegations of Paragraph 74.

### SIXTH CAUSE OF ACTION

(Conversion)

75.   Plaintiff incorporates Paragraph 1 through 74, inclusive of this Complaint as though fully set forth herein.

**ANSWER:**   Defendant hereby incorporates by reference his responses to the allegations contained in Paragraphs 1 to 74, inclusive, as though fully restated herein, in answer to Plaintiff's adoption and incorporation of said same paragraphs of the Complaint.

76.   ZIMMIE is an accomplished artist and has created many pieces of artwork. WARNER loved her paintings and took them from her to decorate their Montecito home and his many properties and businesses.

**ANSWER:**   Defendant admits that Plaintiff has created certain paintings. Defendant denies the remaining allegations of Paragraph 76.

77.   ZIMMIE believed that WARNER's intentions were to create a trusting and loving relationship for which ZIMMIE would continue to be taken care of for the rest of her life as was promised by WARNER.

1      **ANSWER:**    Defendant lacks knowledge or information sufficient to form a

2   belief about the truth of the allegations contained in Paragraph 77, and therefore denies

3   the same.

4      78.   The paintings range from two foot by four foot to five foot by six foot and

5   are mixed media on canvas and are best described as abstract expressionistic similar to

6   those of artist Helen Frankenthaler.

7      **ANSWER:**    Defendant admits that Plaintiff has made paintings of different

8   sizes and has made paintings on canvas.  Defendant lacks knowledge or information

9   sufficient to form a belief about the truth of the remaining allegations contained in

10   Paragraph 78, and therefore denies the same.

11      79.   Two large original paintings are in WARNER's personal office at Ty, Inc.

12      **ANSWER:**    Defendant denies the allegations of Paragraph 79.

13      80.   Twenty-six original paintings are in the aforementioned home in Santa

14   Barbara.

15      **ANSWER:**    Defendant admits that certain paintings made by Plaintiff at times

16   have been in the house located at 1000 Channel Drive, Santa Barbara, CA 93108.

17   Defendant lacks knowledge or information sufficient to form a belief about the truth of

18   the remaining allegations contained in Paragraph 80, and therefore denies the same.

19      81.   Seven original paintings are in the New York Four Seasons hotel.

20      **ANSWER:**    Defendant denies the allegations of Paragraph 81.

21      82.   Twenty reproductions are in the Montecito Country Club.

22      **ANSWER:**    Defendant lacks knowledge or information sufficient to form a

23   belief about the truth of the allegations contained in Paragraph 82, and therefore denies

24   the same.

25      83.   Two original paintings are in the Biltmore Santa Barbara hotel.

26      **ANSWER:**    Defendant denies the allegations of Paragraph 83.

27      84.   Additionally, WARNER continues to use ZIMMIE's drawings for

28   advertisements in the Montecito Journal for the San Ysidro Ranch.

**ANSWER:**    Defendant admits the allegations in Paragraph 84.

85.   Further, ZIMMIE created designs and logos for many Beanie Baby paraphernalia sold by WARNER.

**ANSWER:**    Defendant denies the allegations in Paragraph 85.

86.   Moreover, ZIMMIE redrew approximately 150 Beanie Baby designs, for use that was licensed by WARNER and sold in various types of products including T-shirts, children's clothing and towels to name a few of the items.

**ANSWER:**    Defendant denies the allegations in Paragraph 86.

87.   WARNER substantially interfered with ZIMMIE's artwork by knowingly or intentionally refusing to return the artwork to ZIMMIE despite her requests to return the same.

**ANSWER:**    Defendant denies the allegations in Paragraph 87.

88.   ZIMMIE did not consent to the taking of the artwork after their relationship ended.

**ANSWER:**    Defendant denies the allegations in Paragraph 88.

89.   ZIMMIE has suffered harm by the loss of value of the artwork while WARNER continues to profit from the same at his properties.

**ANSWER:**    Defendant denies the allegations in Paragraph 89.

90.   WARNER's conduct was a substantial factor in causing ZIMMIE's harm for which she has suffered damages in excess of the jurisdictional limits of this Court.

**ANSWER:**    Defendant denies the allegations in Paragraph 90.

## SEVENTH CAUSE OF ACTION

(Fraud/Civil RICO)

**[PLAINTIFF'S SEVENTH CAUSE OF ACTION HAS BEEN DISMISSED PURSUANT TO COURT'S ORDER OF FEBRUARY 15, 2022 (DKT. NO. 51.)]**

91.   Plaintiff incorporates Paragraph 1 through 90, inclusive of this Complaint as though fully set forth herein.

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

**ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and Plaintiff elected not to replead this count, no response to the allegations contained in this Paragraph is required.   To the extent any response is required, Defendant incorporates by reference his responses to the allegations contained in Paragraphs 1 through 90.

92.   Defendant WARNER and individuals who assisted him in his financial and legal affairs, participated in criminal conduct with actual knowledge of the illegal activities.

**ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and Plaintiff elected not to replead this count, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant avers that Paragraph 92 contains legal conclusions as to which no response is necessary. Answering further, to the extent any response is required, Defendant denies the allegations of Paragraph 92.

93.   Defendant WARNER, and individuals who assisted him in his financial and legal affairs. participated in a pattern of racketeering activity.

**ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and Plaintiff elected not to replead this count, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant avers that Paragraph 93 contains legal conclusions as to which no response is necessary. Answering further, to the extent any response is required, Defendant denies the allegations of Paragraph 93.

94.   Defendant WARNER and individuals who assisted him in his financial and legal affairs comprised an enterprise (the "Enterprise") within the meaning of 18 U.S.C. § 1961(4), that is, the Enterprise constituted a group of individuals associated in fact that were engaged in, and the activities of which affected, interstate commerce.

**ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and Plaintiff elected not to replead this count, no response to the allegations contained in

26

this Paragraph is required.  To the extent any response is required, Defendant avers that Paragraph 94 contains legal conclusions as to which no response is necessary. Answering further, to the extent any response is required, Defendant denies the allegations of Paragraph 94.

95.   The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

**ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and Plaintiff elected not to replead this count, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant avers that Paragraph 95 contains legal conclusions as to which no response is necessary. Answering further, to the extent any response is required, Defendant denies the allegations of Paragraph 95.

96.   The purposes of the Enterprise were to provide tax benefits to Defendant WARNER, to deceive and defraud Plaintiff ZIMMIE, and to perpetuate WARNER's relationship with ZIMMIE by convincing her that she was properly compensated and that she would always be financially secure.

**ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and Plaintiff elected not to replead this count, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant denies the allegations of Paragraph 96.

97.   The members of the Enterprise expected to receive financial opportunities and personal benefits, including increased power and status within the Enterprise.

**ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and Plaintiff elected not to replead this count, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant denies the allegations of Paragraph 97.

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

98.   In connection with the Enterprise, WARNER and other members of the Enterprise misappropriated ZIMMIE's identity to create a fictitious legal entity that ZIMMIE knew nothing about. WARNER funneled funds through this fictitious entity to deceive ZIMMIE and others.

**ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and Plaintiff elected not to replead this count, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant denies the allegations of Paragraph 98.

99.   The Enterprise operated within the State of California and across interstate boarders.

**ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and Plaintiff elected not to replead this count, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant denies the allegations of Paragraph 99.

100.   ZIMMIE brings this private civil claim pursuant to 18 U.S.C. Section 1964 against WARNER as she has been injured as a direct and proximate result of the Defendants' activities and violations of 18 U.S.C. § 1962.

**ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and Plaintiff elected not to replead this count, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant denies the allegations of Paragraph 100.

101.   On or about January 2018, The Enterprise created a company using the name of ZIMMIE and named it Cleveland Design Consultants, LLC, without her knowledge.

**ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and Plaintiff elected not to replead this count, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant denies the allegations of Paragraph 101.

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

102.  This purported legal entity was formed by Defendant WARNER'S legal counsel along with his financial advisors.

**ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and Plaintiff elected not to replead this count, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant denies the allegations of Paragraph 102.

103.  This business was created without executed signatures by Plaintiff ZIMMIE on either the LLC Agreement nor the Resolution Agreement.

**ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and Plaintiff elected not to replead this count, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 103, and therefore denies the same.

104.  Moreover, additional documents, including a Power of Attorney that purported to assign ZIMMIE's decision making to a member of The Enterprise was not signed by Plaintiff ZIMMIE and appear to contain an inauthentic signature.

**ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and Plaintiff elected not to replead this count, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant denies the allegations of Paragraph 104.

105.  Upon information and belief, WARNER, and those associated with him, funneled money into and through Cleveland Design Consultants, LLC – wiring funds into the account on numerous occasions.

**ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and Plaintiff elected not to replead this count, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant denies the allegations of Paragraph 105.

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

106.   Without Plaintiff ZIMMIE'S knowledge, these funds were then transferred from the LLC account into other accounts at the direction of WARNER or other members of The Enterprise.

**ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and Plaintiff elected not to replead this count, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant denies the allegations of Paragraph 106.

107.   Defendant WARNER and The Enterprise shared in a plan to defraud ZIMMIE from money that now they refer to as a salary, they had an intent to defraud her for her services to WARNER and his business, they also were area that the money would pass from WARNER and his business to some unknown location controlled by WARNER and The Enterprise.

**ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and Plaintiff elected not to replead this count, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant denies the allegations of Paragraph 107.

108.   This behavior exhibited by Defendant WARNER is not unusual as Defendant is a convicted felon. In 2014, he was convicted of tax evasion for creating a secret offshore account.

**ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and Plaintiff elected not to replead this count, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant denies the allegations contained in the first sentence of Paragraph 108.  Defendant admits that, in 2013, he pled guilty to a one-count information alleging a violation of 26 U.S.C. § 7201.  At sentencing, the court stated that it "never . . . had any defendant in any case . . . demonstrate the level of humanity and concern for the welfare of others as has Mr. Warner" and found that it would be inappropriate to impose any period of

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

1    incarceration on Defendant.  Defendant denies the remaining allegations of Paragraph
2    108.

3         109.   Defendant WARNER, his advisors and associates, and The Enterprise's,
4    activities constitute violations of 18 U.S.C. § 1962 demonstrating a pattern of deceit
5    conducted over a number of years. Specifically, WARNER wired funds to the
6    Cleveland Design Consultants, LLC perpetually from 2018 to 2020 on more than 50
7    occasions.

8         **ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and
9    Plaintiff elected not to replead this count, no response to the allegations contained in
10   this Paragraph is required.  To the extent any response is required, Defendant denies
11   the allegations of Paragraph 109.

12        110.   ZIMMIE suffered harm through identity theft and wire fraud for which she
13   was recently informed by the Delaware Secretary of State that she is delinquent on
14   paying of overdue taxes on the Cleveland Design Consultants, LLC business.

15        **ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and
16   Plaintiff elected not to replead this count, no response to the allegations contained in
17   this Paragraph is required.  To the extent any response is required, Defendant denies
18   the allegations of Paragraph 110.

19        111. Further, WARNER is now utilizing The Enterprises' wrongdoing as
20   'evidence' that should be used to defeat Zimmie's civil claims against him.

21        **ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and
22   Plaintiff elected not to replead this count, no response to the allegations contained in
23   this Paragraph is required.  To the extent any response is required, Defendant denies
24   the allegations of Paragraph 111.

25        112.   ZIMMIE was further damaged personally in that she did not even receive
26   the purported benefited of the $200,000 per annum that the fictitious agreement
27   allegedly entitled her to for her design services from January 2018 to November, 2020.

28

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

For the avoidance of any doubt, ZIMMIE in no manner concedes that is the extent of her value of services.

**ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and Plaintiff elected not to replead this count, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant denies the allegations of Paragraph 112.

113. WARNER's criminal conduct was a substantial factor in causing ZIMMIE's harm including her identity theft and failure to be compensated per an alleged contract which WARNER alleges exists for which she has suffered damages in excess of the jurisdictional limits of this Court.

**ANSWER:**   Because Plaintiff's Seventh Cause of Action was dismissed and Plaintiff elected not to replead this count, no response to the allegations contained in this Paragraph is required.  To the extent any response is required, Defendant denies the allegations of Paragraph 113.

The remainder of Plaintiff's Second Amended Complaint consists of Plaintiff's prayer for relief to which no response is required.  To the extent any response is required, Defendant denies that Plaintiff is entitled to the relief sought in the Second Amended Complaint or to any relief whatsoever.

## DEFENDANT'S DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), Defendant, without waiver, limitation or prejudice, and without conceding that it bears the burden of proof or production, hereby asserts the following defenses.

## First Affirmative Defense

One or more of Plaintiff's claims are barred, in whole or in part, because of Plaintiff's consent, ratification, agreement, permission, acquiescence, or authorization. For example, without limitation, Plaintiff gifted or transferred certain paintings and therefore consented to any possession or use made of said paintings by others. Additionally, Plaintiff was aware that others had possession of certain paintings and

were displaying certain paintings but did not make any demand for their return. Further, Plaintiff was aware of the use of certain drawings, designs or logos and never objected to the same or demanded that their use be discontinued.  Defendant reserves any and all rights to demonstrate additional facts in support of this affirmative defense.

### Second Affirmative Defense

One or more of Plaintiff's claims are barred, in whole or in part, by the Statute of Frauds.  Plaintiff's claims are based on the alleged existence of an oral or implied agreement, which would be unenforceable under the Statute of Frauds.  Defendant reserves any and all rights to demonstrate additional facts in support of this affirmative defense.

### Third Affirmative Defense

One or more of Plaintiff's claims are barred, in whole or in part, by the doctrines of unclean hands and in pari delicto.  For example, without limitation, Plaintiff gifted or transferred certain paintings and has misrepresented her current ownership of said paintings. Further, Plaintiff has made misrepresentations and failed to disclose information to Defendant in order to obtain financial benefits from Defendant. Further, Plaintiff has accepted significant payments of at least $200,000 a year since 2018 pursuant to the terms of a consulting agreement that she entered into with Defendant's companies on behalf of her company Cleveland Design Consultants LLC, while misrepresenting her acceptance of these benefits and her participation in the creation of Cleveland Design Consultants LLC.  Plaintiff is therefore barred from any recovery under the doctrines of unclean hands and in pari delicto. Defendant reserves any and all rights to demonstrate additional facts in support of this affirmative defense.

### Fourth Affirmative Defense

One or more of Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, laches, acquiescence, and/or estoppel.  For example, without limitation, Plaintiff gifted or transferred certain paintings referenced in the Second Amended Complaint, was aware that others had possession of certain paintings and displayed

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

certain paintings and was aware of the use of certain drawings, designs or logos yet never objected to the same.  Further, Plaintiff has accepted significant payments of at least $200,000 a year since 2018 pursuant to the terms of a consulting agreement that she entered into with Defendant's companies on behalf of her company Cleveland Design Consultants LLC, while misrepresenting her acceptance of these benefits and her participation in the creation of Cleveland Design Consultants LLC.  Plaintiff also knowingly acquiesced and permitted all alleged uses of her painting and other purported materials Plaintiff claims to own in the Second Amended Complaint. Plaintiff accepted the benefits of this agreement for several years and therefore is estopped from denying its existence. Defendant reserves any and all rights to demonstrate additional facts in support of this affirmative defense.

### Fifth Affirmative Defense

One or more of Plaintiff's claims are barred, in whole or in part, by the doctrine of illegality.  For example, without limitation, Plaintiff alleges the existence of an agreement to provide her with future support and palimony.  Defendant denies that such an agreement was made.  However, to the extent any such agreement is found to exist, it is illegal and therefore unenforceable.  Defendant reserves any and all rights to demonstrate additional facts in support of this affirmative defense.

### Sixth Affirmative Defense

One or more of Plaintiff's claims are barred, in whole or in part, by the doctrine of copyright preemption.  For example, without limitation, Plaintiff seeks relief for Defendant's purported use, reproduction, display and/or distribution of paintings, drawings, advertisements, designs and other works allegedly created by Plaintiff.  To the extent Plaintiff asserts claims or seeks relief for any legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by 17 U.S.C. § 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by 17 U.S.C. §§ 102 and 103, all such allegations are preempted by the Copyright Act pursuant to

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

17 U.S.C. § 301. Defendant reserves any and all rights to demonstrate additional facts in support of this affirmative defense.

### Seventh Affirmative Defense

One or more of Plaintiff's claims are barred, in whole or in part, by the statute of limitations, including, without limitation, those set forth in Code of Civil Procedure sections 335.1, 337, 338, and 339. For example, without limitation, Plaintiff relies on conduct that allegedly occurred in 2012 to sustain her intentional and negligent infliction of emotional distress claims. Further, Plaintiff seeks recovery for the alleged use, display, and/or distribution of paintings, drawings, advertisements, designs and other works allegedly created by Plaintiff where the alleged use, reproduction, display and/or distribution occurred outside of the statute of limitations. *See* 17 U.S.C. § 507(b). Defendant reserves any and all rights to demonstrate additional facts in support of this affirmative defense.

### Eighth Affirmative Defense

One or more of Plaintiff's claims are barred, in whole or in part, by the doctrine of abandonment. Plaintiff voluntarily relinquished various ownership rights in certain paintings, drawings, designs, logos or other works. Plaintiff gifted or transferred such works, was aware that others had possession of certain of them, was aware that others were displaying certain of them, and was aware that others were making use of certain of them, yet Plaintiff did not object to the same or demand that their display or use be discontinued or that the works be returned. Defendant reserves any and all rights to demonstrate additional facts in support of this affirmative defense.

### Ninth Affirmative Defense

One or more of Plaintiff's claims are barred, in whole or in part, by the interests and rights of Defendant or third parties to certain property. Plaintiff gifted or transferred certain paintings, drawings, designs, logos or other works and therefore Plaintiff is not the rightful owner of such works. Further, certain drawings, designs or other works allegedly created by Plaintiff were created pursuant to one or more

35

agreements entered into by Plaintiff, including the agreement between Plaintiff's company Cleveland Design Consultants LLC on the one hand, and Defendant's companies, Ty, Inc. and Ty Warner Hotels & Resorts, LLC on the other hand. Plaintiff and/or Plaintiff's company were paid for certain work and therefore Plaintiff has no rights of ownership in the alleged works. Defendant reserves any and all rights to demonstrate additional facts in support of this affirmative defense.

### Tenth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to mitigate her alleged damages. Defendant reserves any and all rights to demonstrate all applicable facts in support of this affirmative defense.

### Eleventh Affirmative Defense

One or more of Plaintiff's claims are barred, in whole or in part, by the doctrine of parol evidence. For example, one agreement that exists to provide compensation to Plaintiff is the consulting agreement that Plaintiff, on behalf of her company, Cleveland Design Consultants LLC entered into on January 16, 2018.  That agreement contains an integration clause.  Accordingly, the doctrine of parol evidence bars any claims based on Plaintiff's allegations that there exists an oral agreement imposing obligations on the parties different from or in addition to those imposed under the consulting agreement. Defendant reserves any and all rights to demonstrate additional facts in support of this affirmative defense.

### Twelfth Affirmative Defense

Any recovery by Plaintiff is barred, in whole or in part, by the doctrine of setoff. To the extent that Plaintiff is entitled to any recovery for design work, including the creation of any drawings, designs, logos or other works, utilized by Defendant's companies, such recovery must be offset by the amounts that have been previously paid to Plaintiff, including but not limited to the amounts paid to Plaintiff's company, Cleveland Design Consultants LLC. Defendant reserves any and all rights to demonstrate additional facts in support of this affirmative defense.

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

**Thirteenth Affirmative Defense**

One or more of Plaintiff's claims is barred, in whole or in part, because Plaintiff lacks standing. Defendant reserves any and all rights to demonstrate all applicable facts in support of this affirmative defense.

**Fourteenth Affirmative Defense**

One or more of Plaintiff's claims is barred, in whole or in part, because of a lack of causation, including because any injuries that may have been suffered were caused solely or proximately by the intervening and superseding acts and omissions of others including Plaintiff herself. Defendant reserves any and all rights to demonstrate all applicable facts in support of this affirmative defense.

**Fifteenth Affirmative Defense**

One or more of Plaintiff's claims are barred, in whole or in part, by the doctrine of novation.  Plaintiff alleges the existence of an agreement to provide her with future support and palimony.  Defendant denies that such an agreement was made.  However, to the extent any such agreement is found to exist, Plaintiff is barred from any recovery because any prior oral agreement was canceled when the consulting agreement was formed. Defendant reserves any and all rights to demonstrate all applicable facts in support of this affirmative defense.

**Sixteenth Affirmative Defense**

Plaintiff is not entitled to interest, attorney's fees, or costs in connection with this action.  For instance, without limitation, there is no action on a contract pleaded that permits the right to recover attorney's fees.  Defendant reserves any and all rights to demonstrate all applicable facts in support of this affirmative defense.

**Seventeenth Affirmative Defense**

One or more of Plaintiff's tort claims is barred, in whole or in part, based on the doctrine of privilege. Defendant reserves any and all rights to demonstrate all applicable facts in support of this affirmative defense.

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

**Eighteen Affirmative Defense**

Plaintiff's claim for negligence (negligent infliction of emotional distress) is barred, in whole or in part, based on the doctrines of comparative fault and contributory negligence. Defendant reserves any and all rights to demonstrate all applicable facts in support of this affirmative defense.

**Nineteenth Affirmative Defense**

One or more of Plaintiff's tort claims is barred, in whole or in part, based on the doctrine of assumption of risk.  Defendant reserves any and all rights to demonstrate all applicable facts in support of this affirmative defense.

**Twentieth Affirmative Defense**

One or more of Plaintiff's claims are barred, in whole or in part, by the doctrine of prior material breach.  For example, without limitation, Plaintiff alleges the existence of an agreement to provide her with future support and palimony.  Defendant denies that such an agreement was made.  However, to the extent any such agreement is found to exist, Plaintiff is barred from any recovery as a result of her prior material breach of its alleged terms.  Defendant reserves any and all rights to demonstrate all applicable facts in support of this affirmative defense.

**Twenty-First Affirmative Defense**

One or more of Plaintiff's claims are barred, in whole or in part, by the doctrine of accord and satisfaction.  For example, without limitation, Plaintiff alleges the existence of an agreement to provide her with future support and palimony.  Defendant denies that such an agreement was made.  However, to the extent any such agreement is found to exist, Plaintiff is barred from any recovery as a result of accord and satisfaction.  Defendant reserves any and all rights to demonstrate all applicable facts in support of this affirmative defense.

**Twenty-Second Affirmative Defense**

One or more of Plaintiff's claims are barred, in whole or in part, because any alleged oral or implied agreement is too indefinite and vague to be enforceable.

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant reserves any and all rights to demonstrate all applicable facts in support of this affirmative defense.

### Twenty Third Affirmative Defense

One or more of Plaintiff's claims are barred, in whole or in part, by the economic loss doctrine. Defendant reserves any and all rights to demonstrate all applicable facts in support of this affirmative defense.

### Additional Defenses

Defendant has insufficient knowledge or information to determine whether he may have additional, as yet unstated, defenses.  Defendant has not knowingly and intentionally waived any applicable defenses and reserves the right to assert additional defenses as they become known to him through discovery in this matter.  Defendant reserves the right to amend this Answer to add, delete, or modify defenses based on legal theories that may be or will be divulged through clarification of Plaintiff's Complaint, through discovery, or through further legal analysis of Plaintiff's position in this litigation.

Dated:  April 8, 2022          By: _____

Jared M. Katz (SBN 173388)
     jkatz@mullenlaw.com
MULLEN & HENZELL L.L.P.
112 East Victoria Street
Santa Barbara, CA  93101
Telephone:  (805) 966-1501
Facsimile:  (805) 966-9204

Gregory J. Scandaglia (pro hac vice)
     gscandaglia@scandagliaryan.com
Therese L. Tully (pro hac vice)
     ttully@scandagliaryan.com
SCANDAGLIA RYAN LLP
55 East Monroe Street, Suite 3440
Chicago, IL 60603
Telephone:  (312) 580-2020
Facsimile:  (312) 782-3806

*Attorneys for Defendants H. Ty Warner*
*and Fairway BB Property, LLC*

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that all counsel of record who are deemed to have consented to electronic service are being served with a copy of **DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT** via the Court's CM/ECF system this 8th day of April, 2022.

Dated:  April 8, 2022

_____
Jared M. Katz

*Attorneys for Defendants H. Ty Warner and Fairway BB Property, LLC*

25660-0001
4869-4830-2619

40
DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT